AMERICO LOPES, trustee,[1] *vs.* CITY OF PEABODY.

Suffolk. December 8, 1993 - March 14, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH & GREANEY, JJ.

*Zoning,* Wetlands, Validity of by-law or ordinance. *Eminent Domain,* What constitutes taking. *Constitutional Law,* Taking of property.

A purchaser of land subject to a zoning restriction at the time of his purchase is entitled to challenge the continued applicability of the restriction. [302-303]

The court discussed the factors to be considered in light of *Lucas* v. *South Carolina Coastal Council,* 112 S. Ct. 2886 (1992), on remand of an action challenging the validity of a section of a zoning ordinance establishing a wetlands conservancy district. [303-307]

CIVIL ACTION commenced in the Land Court Department on December 12, 1989.

The case was heard by *Marilyn M. Sullivan,* J.

After review by the Appeals Court and remand to that court by the Supreme Court of the United States, the Supreme Judicial Court granted a request for direct review.

*Nicholas J. Decoulos* for the plaintiff.

*Lawrence J. O'Keefe,* City Solicitor, for the defendant.

The following submitted briefs for amici curiae:

*Daniel J. Popeo & Paul D. Kamenar,* of the District of Columbia, for Washington Legal Foundation.

*Richard S. Emmet* for Conservation Law Foundation & another.

*John D. Echeverria & Sharon Dennis,* of the District of Columbia, for National Audubon Society.

*Scott Harshbarger,* Attorney General, & *Stephen Dick,* Assistant Attorney General, for the Commonwealth.

---

[1]Of the 841 Lake Realty Trust.

WILKINS, J. We consider this case on remand from the Supreme Court of the United States in light of that Court's opinion in *Lucas* v. *South Carolina Coastal Council*, 112 S. Ct. 2886 (1992).[2] In its *Lucas* opinion, the Supreme Court held that a landowner was entitled to compensation for a taking when a zoning regulation effectively prohibited all economically beneficial use of the land, unless the prohibition could be independently justified under principles of South Carolina nuisance or property law. *Id.* at 2900.

The plaintiff Lopes commenced this action in the Land Court in December, 1989, pursuant to G. L. c. 185, § 1 (*j* ½) (1992 ed.), and G. L. c. 240, § 14A (1992 ed.), to challenge the validity of a section of the Peabody zoning ordinance (§ 4.3.4). That section establishes a wetlands conservancy district, as an overlay district, in various parts of the city. Lopes owns a vacant parcel of approximately one-quarter acre which abuts Devil's Dishfull Pond, a great pond (G. L. c. 131, § 1 [1992 ed.]), and lies, in large measure, within the wetlands conservancy district.[3] In 1981, six years after the city had adopted the challenged zoning provision,

---

[2]On March 22, 1993, the Supreme Court granted the plaintiff Lopes's petition for writ of certiorari, vacated the judgment entered in the Land Court, and remanded the case to the Appeals Court "for further consideration in light of [the *Lucas* case]." *Lopes* v. *Peabody*, 113 S. Ct. 1574 (1993). In May, 1993, the Appeals Court ordered the parties to file supplemental briefs "addressing the *Lucas* issue." We then granted a request for direct review.

Our discussion of the *Lucas* issue in this opinion necessarily deals only with a Federal constitutional question. No question is properly before us under the State Constitution. Lopes's reference to art. 10 of the Massachusetts Declaration of Rights for the first time in his supplemental, post-*Lucas* brief to the Appeals Court comes too late. See *Phillips* v. *Youth Dev. Program, Inc.*, 390 Mass. 652, 660 (1983). On remand, Lopes may rely on art. 10 if he makes a reasoned argument that art. 10 grants him greater protection than he has under the Fifth and Fourteenth Amendments. Cf. *Steinbergh* v. *Cambridge*, 413 Mass. 736, 738 (1992), cert. denied, 113 S. Ct. 2338 (1993).

[3]As applied to the Lopes lot, the challenged ordinance forbids the construction of any new building or structure within thirty feet of this great pond or below an elevation of 88.5 feet above sea level. Permitted uses in a wetlands conservancy district, subject to the approval of the city's conservation commission, include farming, nurseries, and recreation.

Lopes acquired the lot, along with three other noncontiguous parcels. The lot, which is in a single family residence district, is bounded on the south by a railroad right of way; on the east by Lake Street, a public way; and on the west and north by the great pond. The elevation of all but a small portion of the lot is below the 88.5 foot contour of the wetlands conservancy district.

The judge found that the elevation defining the district was based on the expected consequences of a one-hundred-year storm, taking into account the constraint on the flow of water created by Lake Street and the culvert that provides an outflow for the great pond. That outflow would ultimately reach the Ipswich River and the ocean. Lopes could locate a small house on the lot without impinging on the thirty-foot setback requirement but no such construction would be permitted, unless the minimum elevation allowed in the district were reduced.[4] The parties stipulated that Lopes "is unable to use his land as a result of the revision of the Zoning Ordinance." The judge viewed Lopes's use of the land to be a mixed question of law and fact. There was no evidence to permit a comparison of the fair market value of the property with and without the restrictions in effect.[5]

A judge of the Land Court ruled that the city's determination of 88.5 feet as the minimum permitted elevation in the wetlands conservancy district at Devil's Dishfull Pond was a valid exercise of legislative discretion, was not arbitrary or unreasonable, and was enforceable as applied to the Lopes lot. She further ruled that there had been no taking of Lopes's land for which he was entitled to compensation. Lopes appealed to the Appeals Court.

---

[4]The parcel is a nonconforming lot, at least as to area, but the judge stated, without passing on the point, that the parcel may be a protected nonconforming lot. See G. L. c. 40A, § 6 (1992 ed.).

[5]Although the question of damages for any taking was not before the Land Court and no evidence was offered there on the measure of damages, the fact of a taking would bear on the validity of the challenged zoning restriction, a point to which we shall return.

On July 7, 1992, the Appeals Court in an unpublished memorandum (32 Mass. App. Ct. 1124 [1992]) concluded that, although, in its words, Lopes had "no practical or beneficial use of his land," due process considerations did not compel a decision in his favor. It concluded that conservation objectives and the prevention of flood damage to homes justified as rational the elevation contour selected to define the district at Devil's Dishfull Pond. The Appeals Court thought it significant that Lopes had purchased his property with full knowledge of its location in the restricted district. In similar terms, it discussed Lopes's claim that his land had been taken without compensation, noting authority for the adoption of reasonable restraints on land use for environmental reasons and concluding that Lopes, who knew of the regulations when he bought the parcel, "can hardly claim inverse condemnation." On September 3, 1992, this court denied Lopes's application for further appellate review. 413 Mass. 1105 (1992). About seven months later, the Supreme Court of the United States allowed Lopes's petition for writ of certiorari and remanded the case to the Appeals Court. See note 2 above. We transferred the case here.

This action involves the validity of a zoning regulation and does not present a claim for damages as a result of a taking of Lopes's property. Lopes's argument in recent filings, however, has focused on the taking question.[6] Lopes's right to damages cannot be resolved in this action.[7] But the validity

[6]That is the sole issue he argued to this court in his application for further appellate review.

In his petition for a writ of certiorari, Lopes stated that the questions presented for review were (1) whether he had to be justly compensated under the Fifth Amendment to the United States Constitution when, what he called "a regulation validly enacted pursuant to the State's Zoning Enabling Act," leaves his land "valueless and without any beneficial use" and (2) whether he as a subsequent landowner had a claim for deprivation of the use of his property. Lopes further contended that the decision against him "improperly approved a land taking without just compensation."

[7]The question whether the zoning restriction is valid is different from the question whether Lopes has a valid claim for damages because of an alleged taking. We need not, therefore, decide when any taking may have occurred, when any statute of limitations began to run, what rights Lopes

of the ordinance is before us, and Lopes, a purchaser of land subject to the restriction at the time of his purchase, has every right to challenge the continued application of the restriction. See *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 444-445 (1949). We see no reason to permit challenges to the validity of a zoning enactment only by those landowners who owned land when the zoning provision first affected it. A rule that a purchaser of real estate takes subject to all existing zoning provisions without any right to challenge any of them would threaten the free transferability of real estate, ignore the possible effect of changed circumstances, and tend to press owners to bring actions challenging any zoning provision of doubtful validity before selling their property. Moreover, such a rule of law would in time lead to a crazy-quilt pattern of the enforceability of a zoning law intended to have uniform applicability.[8]

We do not attribute to Peabody an intention to adopt a zoning restriction that denies all economically beneficial use to a parcel of land except where, in circumstances recognized by the *Lucas* opinion, that restriction is independently justified by other principles of land use law restricting the use of that land. Hence, if the ordinance denies the Lopes property all economically beneficial use and no justification exists for

---

may have to damages for inverse condemnation as one who purchased the land after the ordinance was adopted, or what the measure of any damages might be (see *Steinbergh* v. *Cambridge*, 413 Mass. 736, 742-743 [1992], cert. denied, 113 S. Ct. 2338 [1993]). One or more of these questions may be involved in Americo Lopes *vs.* City of Peabody, Essex Superior Court No. 90-3874, a petition for the assessment of damages "as a result of a taking" of Lopes's real estate, in which Lopes seeks compensation "for the loss of his property during the period while said Zoning Ordinance was in effect and caused the Plaintiff the loss of the use of his property." This allegation suggests that Lopes seeks damages for a regulatory taking of less than the fee interest in the land (in effect, a temporary taking). See *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U.S. 304, 321 (1987).

[8]We observed earlier that the rights of a subsequent purchaser to takings damages might well stand in a posture significantly different from that of one seeking to have a zoning provision invalidated. See note 7 above.

that restriction, a judgment should be entered that the restrictions of the ordinance are inapplicable to Lopes's property to the extent necessary to eliminate that denial, that is, to permit an economically beneficial use of the land. We attribute to the city, as a matter of State law, the intention to have the ordinance enforced to the extent that it is constitutionally permissible to do so. No general order of invalidation of the ordinance, or of specific provisions of it, would be warranted as a result of a determination that, as applied to one lot, the limitations of the ordinance were invalid in whole or in part.

On the other hand, if the ordinance does not deprive the Lopes property of all economically beneficial use, the validity of the ordinance and the related question whether there has been a regulatory taking must be considered for Federal constitutional purposes under the principles that were applicable prior to the *Lucas* case (and, of course, in any event, pursuant to any further guidance that may be available from the Supreme Court before the Land Court should decide the case). See, as to the regulatory taking question, *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980), and *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 124 (1978).

The case must be remanded to the Land Court for a new hearing and further consideration. The *Lucas* opinion appears to have changed, or at least refocused, the applicable standards for determining whether, for Federal constitutional purposes, there has been a regulatory taking of property. An essential fact question is whether application of the ordinance has caused the Lopes land to have no economically beneficial use. If the land has no economically beneficial use, a term that the Supreme Court has not yet defined,[9] the ordi-

___

[9]The *Lucas* opinion uses various phrases to describe the condition that might constitute a categorical regulatory taking. The most common characterization is that the land has been deprived "of all economically beneficial use." *Lucas* v. *South Carolina Coastal Council*, 112 S. Ct. 2886, 2895, 2899, 2900 (1992). But see *id.* at 2893 ("all economically beneficial or productive use of land"); 2894 (same); 2894 n.7 ("all economically feasible use"); 2896 ("rendered valueless"); 2900 ("all economically valuable use"); 2901 n.17 ("all use"). The Supreme Court was not pressed to define

nance may be upheld only if it substantially advances legitimate State interests and its application to the Lopes land reflects established principles of State property and nuisance law. See *Lucas, supra* at 2893-2894, 2900. If the ordinance makes a regulatory taking of Lopes's property, the ordinance must be declared invalid to that extent (but only to that extent) as applied to Lopes's property. It is apparent in retrospect that the Appeals Court should have remanded the case to the trial court for the taking of further evidence and for further findings, as was done in *Commissioner of Natural Resources* v. *S. Volpe & Co.*, 349 Mass. 104, 111-112 (1965).[10]

The Land Court judge may elect first to consider the question whether Lopes has proved that the zoning restriction, particularly the 88.5 foot minimum elevation, does not substantially advance legitimate State interests as applied to his lot. See *Lucas, supra* at 2893-2894; *Agins* v. *Tiburon*, 447 U.S. 255, 260 (1980). There is no doubt that flood control and the prevention of pollution of surface and ground water (and great ponds)[11] are legitimate State interests. Lopes is

---

the term because the trial judge had found that Lucas's land had been rendered "valueless." The Supreme Court did not say, however, that a regulatory taking occurred only when property was rendered valueless. Professor Callies's careless reading of our opinion in *Wilson* v. *Commonwealth*, 413 Mass. 352, 357-358 (1992), led him to an unwarranted criticism of our comment on the *Lucas* case. See D.L. Callies, Introduction to After *Lucas*: Land Use Regulation and the Taking of Property Without Compensation, 1993 A.B.A. Sec. on Urb. St. & Loc. Gov't L. 8. The trial judge found, as we said (*Wilson* v. *Commonwealth, supra* at 358), that the property was valueless. We did not say that the Supreme Court's views on regulatory takings concerned only land made valueless.

[10]For completeness, we add that this court should have granted Lopes's application for further appellate review and done the same.

[11]Public rights in the Commonwealth's great ponds are well-established. Colonial ordinances granted every householder the right of "free fishing and fowling" in great ponds of ten acres or more. *Commonwealth* v. *Alger*, 7 Cush. 53, 67 (1851), quoting Anc. Chart. 148, § 2. In the Nineteenth Century this "large and important public right" was interpreted as including "boating, bathing, skating or riding upon the ice, taking water for domestic or agricultural purposes or for use in the arts, and the cutting and taking of ice." *West Roxbury* v. *Stoddard*, 7 Allen 158, 168, 171 (1863). Such uses were lawful and free, as long as they did not "interfere with the

entitled to try to prove that these legitimate State interests
are not served by the 88.5 foot contour in any substantial
way that a lower contour would not serve. The Land Court
judge considered conflicting expert views on the soundness of
the imposition of the 88.5 foot contour. She suggested that
that line preserved a margin of safety, and that its selection
was a peculiarly political decision. The *Lucas* case directs
that the test must be made on a case by case basis as to the
particular land involved. After the *Lucas* opinion, generally
expressed political judgments concerning the desirability of a
zoning regulation will do little to resolve the question
whether a regulation substantially advances State interests.
See *Lucas*, *supra* at 2896-2899.[12]

The Land Court judge, on the other hand, may wish first
to decide whether the regulation deprived the land of all eco-
nomically beneficial use. Of course, the land must be other-
wise useable, economically and legally, for Lopes to demon-
strate that the zoning regulation is unlawful. In other words,
Lopes would have to show that his land, free of the regula-
tion, has some economically beneficial use and that it has
none when subject to the zoning regulation.

If the judge concludes that the zoning regulation deprives
the parcel of all economically beneficial use, the *Lucas* opin-
ion advises us that there is a categorical regulatory taking,
unless under the land use law of the Commonwealth the pro-
posed use would be a nuisance or otherwise impermissible.
*Lucas*, *supra* at 2900. In that instance, a zoning regulation
could validly prohibit in advance any use of land that State

reasonable use of the ponds by others, or with the public right." *Id*. at 171.
Public hunting, fishing, and boating rights in great ponds, though subject
to State and municipal regulation, continue to be preserved under
G. L. c. 131, § 45 (1992 ed.).

[12]The use of a condition occurring once each one hundred years (assum-
ing that is itself defensible) as a guide to the limits of a zoning restriction
may not warrant the use, in addition, of a margin of safety.

A more flexible and safer course of municipal zoning than the city used
might be to establish an intermediate zone between the area of unquestion-
ably prohibited wetlands use and higher ground, in which zone special per-
mits would be required for demonstrated safe uses.

law would bar in any event. *Id.* It is not for us now to be specific on the subject of restrictions that, for example, the law of nuisance and the law of riparian rights impose on the use of land subject to periodic flooding. See *von Henneberg* v. *Generazio*, 403 Mass. 519, 523 (1988); *Lummis* v. *Lilly*, 385 Mass. 41, 44-45 (1982); *Tucker* v. *Badoian*, 376 Mass. 907, 918 n.2 (1978) (Kaplan, J., concurring); *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 228 (1972), cert. denied, 409 U.S. 1108 (1973); *Dartmouth* v. *Silva*, 325 Mass. 401, 404 (1950); *Parker* v. *American Woolen Co.*, 195 Mass. 591, 600 (1907).[13]

---

[13]The Supreme Court has not said where the burden of proof lies on the various regulatory taking issues discussed in the *Lucas* opinion. The rule that a landowner has the burden of showing the unconstitutionality of government action seems generally unaltered. The presumption of constitutionality, however, founded on legislative determinations and pronouncements, seems to have little significance in resolving what is now clearly a case by case question as to whether there has been a regulatory taking. See Frank, Inverse Condemnation Litigation in the 1990s - The Uncertain Legacy of the Supreme Court's *Lucas* and *Yee* Decisions, 43 Wash. U. J. Urb. & Contemp. L. 85, 112-113 (1993). Lopes thus has the burden of showing that the zoning regulation as applied to his property does not substantially advance legitimate State interests (for example, that the reach of the wetlands conservancy district on his land is beyond that which is appropriate substantially to advance the public interest). He will also have the burden of proving that the zoning regulation has deprived the land of all economically beneficial use. He will have to prove that the use of the property (presumably a single family residence use) is one that is economically feasible and otherwise permitted under various other regulations, including the State sanitary code. On the issue whether that use would constitute a nuisance or some other unlawful use of the land, principles guiding the placing of the burden of proof may shift that burden to the city or perhaps place on it the burden of going forward to present evidence tending to show that Lopes's proposed use would improperly exceed other limits on his right to use his land. At least, in such a case, the government must identify background principles of nuisance or property law that prohibit the landowner's proposed use of the property. See *Lucas, supra* at 2901-2902.

The judgment of the Land Court is vacated, and the case is remanded to the Land Court for further proceedings consistent with this opinion. [14]

*So ordered.*

---

[14]The rescript from this court shall direct the city to pay the costs that the Supreme Court ordered be paid to the plaintiff.