VOLTERRA, J.
INTRODUCTION
The plaintiff Joel Darack (Darack) filed this action against the city of Quincy seeking compensation for an alleged regulatory taking of property owned by him and located on the corner of 5-9 Camden Street and 22-32 Hooper Street in Quincy, Massachusetts. This matter is before the court on a motion for summary judgment by Darack pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the plaintiffs motion for summary judgment is DENIED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows. Darack is the owner of a vacant 7800 square foot parcel of land on the corner of 5-9 Camden Street and 22-32 Hooper Street (the property) in Quincy, Massachusetts. The property is located within the Resident A Zoning District in the city of Quincy, in which single family detached dwellings are allowed as a matter of right. However, the property is also located within an overlying flood plain district pursuant to Chapter 17.40 of the City of Quincy Zoning Ordinance.
The purpose of the flood plain district is to provide that land in Quincy subject to seasonal or periodic flooding shall not be used for residential or other purposes in such a manner as to endanger the health or safety of the occupants thereof, and to assure the continuation of the natural flow pattern of the watercourses within the city in order to provide adequate and safe floodwater capacity to protect persons and property against the hazards of flood inundation. Quincy Zoning Ordinance §17.40.010. Within the flood plain district, no new building or structure shall be erected or used for any purpose except conservation of soil, water, plants and wildlife; recreation, including play and sporting areas; forestry, including tree nurseries; storage of materials and/or equipment for cemetery, parks or playground purpose; or dwellings lawfully existing prior to the adoption of these provisions. Quincy Zoning Ordinance §17.40.030.
However, the ZBA may grant a special permit for any use or structure within the flood plain district, subject to certain enumerated conditions, including that the land is shown to be neither subject to flooding nor unsuitable for the proposed use because of hydrological and/or topographic conditions. Quincy Zoning Ordinance §17.40.060(B). Moreover, the ZBA may grant a variance to the flood plain district regulations upon a showing of good and sufficient cause; a determination that failure to grant said variance would result in exceptional hardship to the applicant; a determination that the granting of a variance will not result in increased flood heights, additional threats to public safety, extraordinary public expense, create nuisances or conflict with existing local law; and a determination that the issuance of the variance is the minimum necessary considering the flood hazard to afford relief. Quincy Zoning Ordinance §17.40.070(A).
Accordingly, in 1995 Darack filed an application with the Quincy Zoning Board of Appeals (ZBA) for a variance/special permit flood plain in order to build a 2V2 story wood frame single-family residence on the property.[2] Following a public hearing held on February 14, 1995, the ZBA denied Darack’s application in its entirety in a decision dated March 8, 1995.
Thereafter, on March 27, 1995, Darack filed suit against the city of Quincy alleging in Count I of the complaint that the city’s denial of a special permit/variance violated Chapter 40A, §15 and further alleging in Count II of the complaint that said denial constituted an unconstitutional taking of property without compensation.[3]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the *470 moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The Fifth Amendment to the United States Constitution prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. Similarly, Article Ten of the Massachusetts Declaration of Rights states “no part of the property of any individual can with justice, be taken from him or applied to public use, without his own consent... and whenever the public exigencies require, the property of any individual should be appropriated to public uses, he should receive a reasonable compensation therefor.” Art. X Mass. Declar. Rights.[4] It is well established that for purposes of these provisions, a taking may occur even though the government, through a legitimate exercise of its police power, seeks to fulfill its obligation to preserve and protect the public interest via the zoning or building regulation at issue. MacNeil v. Avon, 386 Mass. 339, 341 (1982).
Darack first contends that the ZBA’s denial of a special permit/variance to build a single family residence on the Parcel constitutes a categorical or total taking under the relevant constitutional clauses, entitling him to just compensation. A regulatory taking is categorical, and thus compensable without case-specific inquiry into the public interest advanced in support of the regulation at issue, where the regulation prohibits all economically viable use of the property. Lucas v. South Carolina Coastal Council, 112 S.Ct. 2886, 2893 (1992). Regulations which “leave the owner of land without economically beneficial or productive options for its use — typically ... by requiring land to be left substantially in its natural state — carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm.” Id. at 2894-95. Under the flood plain ordinance at issue, Darack may utilize the Parcel for conservation, recreation including play and sporting areas, forestry or storage.
However, Darack relies on the Supreme Court decision in Lucas for the proposition that a prohibition on constructing a single family residence in a district zoned for residential use per se deprives an owner of all economically viable use of the property, despite the availability of recreational or other use. Nonetheless, this Court does not read Lucas to require such a result. In Lucas, the Supreme Court did not address the merits of whether the denial of a permit to build residences on Lucas’ two beachfront lots, pursuant to South Carolina’s Beachfront Management Act, rendered those lots valueless, since that issue had not been properly raised for the Court’s consideration. Rather, in deciding the case, the Supreme Court proceeded on the trial court’s assumption that the land was in fact valueless. Lucas v. South Carolina Coastal Council, supra at 2896 n.9. See also Id. at 2908 (Blackmun, J., dissenting) (noting that the lower court found the lots to be deprived of all value even though the state failed to offer any evidence as to the value of the properties without a home and despite the fact that the plaintiffs appraiser never even considered what the value of the lots would be absent a residence, and further emphasizing that Lucas could still make recreational use of the land). Further, Massachusetts courts have consistently concluded that the application of flood plain zoning by-laws does not constitute a de facto taking even though the property owner is left with only exceedingly limited use of a parcel, such as agricultural, horticultural or recreational uses. Turnpike Realty Co. v. Dedham, 362 Mass. 221, 235-37 (1972), cert. den., 409 U.S. 1108 (1973) (findingno taking even though the value of the parcel at issue, located in a residential district, was decreased by 88%); S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass.App.Ct. 477, 482, cert. den., 449 U.S. 1011 (1980) (finding no taking where the portion of land inside the flood plain district could not even be used for recreational purposes, but could nonetheless be used to enhance a parcel outside the flood plain); Turner v. Walpole, 10 Mass.App.Ct. 515, 516 (1980).
In order to establish that he is entitled to compensation for a categorical regulatory taking, Darack must do more than merely allege that Quincy’s flood plain ordinance prevents the Parcel from being put to its most profitable use — the construction of a single family residence — or that the value of the Parcel has been substantially diminished thereby. See MacNeil v. Avon, supra at 341. Rather, he bears the burden of demonstrating that the challenged ordinance deprives him of all economically viable use of the land, leaving him only the burden of paying taxes on it. Id.; Lopes v. Peabody, 417 Mass. 299, 307 n.13 (1994). Such a deprivation is typically measured by the change in the fair market value of the land caused by the regulatory imposition. Penn. Central Transp.. Co. v. New York City, 98 S.Ct. 2646, 2659 (1978); Florida Rock Industries, Inc. v. United States, 18F.3d 1560, 1565-67 (Fed. Cir.), cert. den., 115 S.Ct. 898 (1994). Aside from the conclusory assertion that he has been deprived of all beneficial use of the Parcel, Darack has utterly failed to produce any evidence concerning the economic impact of Quincy’s flood plain ordinance on his properly, such as figures representing the fair market value of the Parcel with a single family residence constructed thereon as compared to the fair market value of the Parcel if utilized for golfing, a tree nursery, or some other use permitted by the ordinance. In the absence *471 of such evidence, Darack has no reasonable expectation of proving at trial that he has been deprived of all economically viable use of the Parcel so as to constitute a categorical regulatory taking. Accordingly,
Darack’s motion for summary judgment on Count II of the complaint must be denied insofar as it alleges a total regulatory taking of the Parcel.[5]
Moreover, summary judgment, when appropriate,may be rendered against the moving party. Mass.R.Civ.P. 56(c); Thattil v. Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc., 415 Mass. 381, 385 (1993). In light of Darack’s failure to produce any evidence concerning the dimunition in value of his land, this Court concludes that the city of Quincy is entitled to the entry of judgment in its favor insofar as the complaint alleges a total regulatory taking.
Finally, Darack contends that even if the court finds that the ZBA’s denial of a special permit/variance did not constitute a categorical taking, he is still entitled to compensation based on a partial deprivation of the economically viable use of the Parcel. A regulation which does not deprive a property owner of all economically beneficial use of his land may nonetheless constitute a regulatory taking based on a balancing of the character of the governmental action, the regulation’s economic impact on the property as a whole, and the extent to which the regulation has interfered with the property owner’s investment-backed expectations. Penn. Central Transp.. Co. v. New York City, supra at 2659; Lucas v. South Carolina Coastal Council, supra at 2895; Steinbergh v. Cambridge, 413 Mass. 736, 743 (1992), cert. den., 113 S.Ct. 2338 (1993). As previously discussed, however, Darack has failed to produce any evidence regarding the economic impact of Quincy’s flood plain ordinance on the Parcel. Therefore, because Darack has no reasonable expectation of proving that he has suffered a compensable regulatory taking based on a partial deprivation of the economically beneficial, use of his land, the city of Quincy is entitled to entry of judgment in its favor.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment be DENIED. It is further ORDERED that summary judgment ENTER in favor of the city of Quincy.

Darack’s application also sought a variance of Chapter 17.28 in order to allow off-street parking in a manner that did not meet the full parking space requirements set forth in Chapter 17.28.

Darack does not dispute that the Parcel is subject to periodic flooding, and thus fails to qualify for a special permit. At the motion hearing on June 13, 1996, Darack agreed to waive the 40A zoning appeal in Count I of his complaint. Thus, the only issue before this Court is whether or not the ZBA’s denial of a special permit/variance constitutes a regulatory taking.

Massachusetts courts utilize the standards of the Fifth Amendment in applying the state takings clause. See Steinbergh v. Cambridge, 413 Mass. 736, 738 (1992), cert. den., 113 S.Ct. 2338 (1993).

This Court notes that even if Darack had introduced evidence that the application of Quincy’s flood plain ordinance rendered the Parcel valueless, he might nonetheless not be entitled to compensation. The state need not compensate a property owner for a categorical taking which deprives land of all economically beneficial use if “the logically antecedent inquiry into the nature of the owner’s estate shows that the proscribed use interests were not part of his title to begin with.” Lucas v. South Carolina Coastal Council, supra at 2899. Takings jurisprudence has traditionally been guided by citizens’ understandings regarding the content of the “bundle of rights" that they acquire when they obtain title to property, as well as their understanding that the state may necessarily restrict the uses of property from time to time. Id. Thus, a property owner is not entitled to compensation where the proposed use prohibited by the challenged regulation would otherwise be impermissible under the state’s nuisance or other common law land use principles. Id. at 2900-01; Lopes v. Peabody, 417 Mass. 299, 306 (1994). Thus, if Darack’s construction of a single family residence on the Parcel would cause an increase in the water surface elevation of the base flood within the city, increasing the flood danger not only to Darack but to other property owners as well, such construction could conceivably constitute a preventable nuisance under common law. See Lopes v. Peabody, supra at 307 (suggesting that the law of nuisance may impose restrictions on land subject to flooding).