89 N.Y.2d 535 (1997)
678 N.E.2d 870
656 N.Y.S.2d 184
In the Matter of Rose E. Anello, Appellant,
v.
Zoning Board of Appeals of the Village of Dobbs Ferry et al., Respondents. Briary Woods Neighborhood Association, Intervenor-Respondent.
Court of Appeals of the State of New York.
Argued January 7, 1997
Decided February 18, 1997.
Morvillo, Abramowitz, Grand, Iason & Silberberg, P. C., New York City (Catherine M. Foti of counsel), for appellant.
Plunkett & Jaffe, P. C., White Plains (Kevin J. Plunkett and Elizabeth S. Torkelsen of counsel), for respondents.
Morgan, Lewis & Bockius LLP, New York City (David Stoelting of counsel), for intervenor-respondent.
Chief Judge KAYE and Judges BELLACOSA, SMITH and LEVINE concur with Judge CIPARICK; Judge WESLEY dissents and votes to modify in a separate opinion; Judge TITONE taking no part.
*538 CIPARICK, J.
Petitioner contends that the denial of a variance from Dobbs *539 Ferry's "steep slope" ordinance, which prevents her from building a one-family dwelling on a parcel, constitutes a taking of property for which she is entitled to just compensation (see, US Const 5th Amend; NY Const, art I, § 7). We disagree and conclude that because petitioner acquired her property after the enactment of the steep-slope ordinance, its enforcement does not deprive her of any property interest.
In 1989, the Village enacted the steep-slope ordinance in an effort to "protect environmentally sensitive lands, preserve the Village's natural resources and promote the orderly development of land * * * with excessively steep slope areas" (Dobbs Ferry Village Code § 300-35.D). To determine whether a lot is large enough to be developed, the ordinance requires a percentage reduction of the property's gross area depending upon the degree of the property's slope, which yields the buildable area. Applying the steep-slope ordinance to petitioner's property, the buildable area is less than 4,200 square feet, well below the Zoning Code's minimum buildable area of 5,000 square feet.
Petitioner sought to construct a one-family dwelling on the property and applied for a variance from the steep-slope ordinance. The Zoning Board of Appeals denied the variance, reasoning that petitioner "acquired the property over two years after the steep slope law came into effect and therefore had full knowledge that the lot was unbuildable and non-conforming." The Board also found that granting a "variance would have a substantial detrimental impact upon the surrounding area and constitute a detriment to the health, safety and welfare of the neighborhood." On petitioner's subsequent CPLR article 78 proceeding, Supreme Court annulled the Board's decision, holding that petitioner was entitled to a variance under the "single and separate ownership" theory. While the Board's appeal was pending before the Appellate Division, this Court rendered its decision in Matter of Khan v Zoning Bd. of Appeals (87 N.Y.2d 344), rejecting the "single and separate ownership" doctrine. The Appellate Division thereafter reversed the order of Supreme Court based solely on Khan and dismissed the petition, concluding that the Board's denial of a variance was not arbitrary or capricious and was supported by substantial evidence.
On appeal to this Court, petitioner's main argument is that the denial of a variance from the steep-slope ordinance works a taking of her property. Petitioner's takings claim must fail because she never acquired an unfettered right to build on the *540 property free from the steep-slope ordinance. Petitioner purchased the property in 1991, two years after the steep-slope ordinance was enacted. This statutory restriction thus encumbered petitioner's title from the outset of her ownership and its enforcement does not constitute a governmental taking of any property interest owned by her (accord, Soon Duck Kim v City of New York, 90 N.Y.2d 1, 14 [decided today] [enforcement of preexisting statutory lateral-support obligation not a taking of a property interest]; Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 N.Y.2d 603, 615-616 [decided today] [enforcement of preexisting statutory wetlands restriction not a taking of a property interest]).
For the reasons fully elaborated in Kim (supra, at 7-8) and Gazza (supra, at 613-614), we are unpersuaded by the arguments in the dissenting opinion. Importantly, petitioner does not seek to invalidate the steep-slope ordinance as an improper exercise of the Village's police power, but only challenges the ordinance as applied to her property (see, Gazza, supra, at 614; Vernon Park Realty v City of Mount Vernon, 307 N.Y. 493, 500-501).
Moreover, we disagree with the dissent's assertion that our holdings in these cases will impede the alienability of property. The rule that preexisting regulations inhere in a property owner's title will affect the value of property, but this should furnish ample incentive to the prior owner  the party whose title has been redefined by the promulgation of a new regulation  to assert whatever compensatory takings claim it might have. If a prior owner, whether immediate or not, fails to assert a takings claim, it is this prior owner who might suffer the potential loss because the purchase price of the property will very likely reflect any restrictions inhering in title. Of course, the parties can condition sale on receipt of the necessary use allowances or prosecution of a takings claim. Any compensation received by a subsequent owner for enforcement of the very restriction that served to abate the purchase price would amount to a windfall, and a rule tolerating that situation would reward land speculation to the detriment of the public fisc. Additionally, the rule advanced by the dissent would have the effect of unsettling property law and other land-use restrictions throughout the State. The bright-line rule articulated in Kim and Gazza, which allows for a subsequent purchaser to challenge the validity of previously enacted laws (as opposed to pursuing a compensatory takings claim), will enhance certainty and, to that extent, facilitate transferability of title.
Furthermore, if property owners were permitted to assert compensatory takings claims based on enforcement of preexisting *541 regulations, the traditional takings analysis articulated in Penn Cent., and its inquiry into "the extent to which the regulation has interfered with distinct investment-backed expectations," would be rendered hopelessly circular (see, Penn Cent. Transp. Co. v New York City, 438 US 104, 124).[1] To illustrate based on the facts of this case: If petitioner's title was defined without regard to the steep-slope restriction, then her investment-backed expectations would include the possibility of winning a compensatory takings lawsuit as a result of the Village's enforcement of the ordinance. However, the success of her compensatory takings lawsuit would depend largely on the extent to which the ordinance interferes with her investment-backed expectations, which would in turn depend on the possible success of the compensatory takings claim, and so on. This inevitable circularity points up the analytical flaw in permitting a subsequent purchaser to assert a compensatory takings claim based on a property interest that has already been defined out of the owner's title.[2]
Petitioner's other arguments are unreserved or without merit. Accordingly, the order of the Appellate Division should be affirmed, with costs.
WESLEY, J. (dissenting).
I disagree that the enforcement of the steep-slope ordinance does not constitute a taking of petitioner's property merely because the ordinance was enacted prior to petitioner's acquisition of the property. I, therefore, respectfully dissent.
In Lucas v South Carolina Coastal Council (505 US 1003, 1029), the United States Supreme Court held that a confiscatory *542 regulation, i.e., one that prohibits all economically beneficial use of land, "cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership." If the Village ordinance in this case prohibits all economically beneficial use of Mrs. Anello's property, then Mrs. Anello must be compensated for the property unless she had already been restricted from developing it by the very nature and location of the lot or by another principle of the law of property of New York.
The majority holds that Mrs. Anello had already been restricted from developing the property by the ordinance itself, because the ordinance had been in effect for two years before she acquired the property. If so, then for any parcel of property that is completely deprived of its value by the ordinance, the Village has, "`by ipse dixit, * * * transform[ed] private property into public property without compensation'" once the parcel is transferred to another (Lucas v South Carolina Coastal Council, supra, 505 US, at 1031, quoting Webb's Fabulous Pharmacies v Beckwith, 449 US 155, 164).
The fact that a parcel is transferred should not make a once-compensable taking become noncompensable. As we reaffirm today, "a subsequent purchaser may attack previously enacted regulations that affect the purchased property as beyond government's legitimate police power" (Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 N.Y.2d 603, 614, citing Pennsylvania Coal Co. v Mahon, 260 US 393, 413; and Vernon Park Realty v City of Mount Vernon, 307 N.Y. 493, 500-501).
The majority reaffirms this rule only in the context of a challenge to the validity of a regulation itself, and not in the context of a claim that an otherwise valid regulation has worked a taking of all the economic value of a particular piece of property. I see no reason to draw such a distinction; to the contrary, I believe that there are compelling reasons why no such distinction should be drawn.
"A rule that a purchaser of real estate takes subject to all existing zoning provisions without any right to challenge any of them would threaten the free transferability of real estate, ignore the possible effect of changed circumstances, and tend to press owners to bring actions challenging any zoning provision of doubtful validity before selling their property. *543 Moreover, such a rule of law would in time lead to a crazy-quilt pattern of the enforceability of a zoning law intended to have uniform applicability" (Lopes v City of Peabody, 417 Mass 299, 303, 629 NE2d 1312, 1315).
Although the court in Lopes noted that "the rights of a subsequent purchaser to takings damages might well stand in a posture significantly different from that of one seeking to have a zoning provision invalidated" (Lopes, supra, at n 8), I believe that each of the considerations applies in this case. For all of these reasons, I would hold that, as long as the Village could not have deprived the prior owners of the parcel of all economically beneficial use of the property without compensation, "the prior owners must be understood to have transferred their full property rights in conveying the lot" (Nollan v California Coastal Commn., 483 US 825, 833-834, n 2; see also, K & K Constr. v Department of Natural Resources, 217 Mich App 56, 64, 551 NW2d 413, 417-418).
If a prior owner cannot transfer a potential taking claim to a subsequent purchaser, then the property's value is destroyed by the transfer without the government having to pay compensation for it. As suggested by the court in Lopes, and as noted in my concurring opinion in Gazza, the majority's reasoning effectively forces New York property owners to keep abreast of regulatory enactments and, if an enactment appears to deprive a parcel of its economic value, to seek compensation for the taking. Any property owner who overlooks or misinterprets a regulatory enactment, or who lacks the resources to commence a taking action, cannot transfer the property to someone else without destroying the property's value. Instead, he or she will find that the property has, without compensation, been dedicated to whatever governmental purpose formed the basis for the regulatory enactment.
The majority's opinion also has the potential to work an interesting alchemy on the estate of a decedent who, through infirmity or other reason, could not challenge a confiscatory regulation prior to the decedent's death. The majority's view also creates the prospect of adjacent landowners with similar lots and similar land use regulations who sue to challenge a regulation as confiscatory, but receive totally different results, dependent upon the date of ownership and the date of the regulation's enactment. I do not believe that such a restriction on alienability comports with the intent of those who drafted the Constitution (see generally, Kmiec, The Original Understanding of the Taking Clause is Neither Weak nor Obtuse, *544 88 Colum L Rev 1630 [1988]).
I recognize that "[t]here is an inherent tendency towards circularity" if a taking is defined by the reasonable expectations of the owner, but "[s]ome circularity must be tolerated in these matters" (Lucas v South Carolina Coastal Council, supra, 505 US, at 1034 [Kennedy, J., concurring]). More importantly, as Justice Kennedy points out, the definition is not entirely circular as long as "[t]he expectations protected by the Constitution are based on objective rules and customs that can be understood as reasonable by all parties involved" (Lucas v South Carolina Coastal Council, supra, 505 US, at 1035). Thus, for example, in Gazza the taking issue was not determined by Mr. Gazza's expectation that the property would be worth $396,000 as a single-family residential lot. That expectation was not reasonable because, as Supreme Court determined, the property had value as a result of other uses permitted under the Tidal Wetlands Act and the local zoning ordinance.
In this case, by contrast, we have no basis for determining whether Mrs. Anello's expectations were reasonable at this point. I am aware of no principle of New York common law, and the majority cites none, that would have prohibited all economically beneficial use of Mrs. Anello's property because its over-all slope is approximately 21%. There is, however, no need for us to conduct such a "logically antecedent inquiry into the nature of the owner's estate" (Lucas v South Carolina Coastal Council, supra, 505 US, at 1027), because no court has yet determined that the denial of the variance from the ordinance deprived the property of all economic use (Spears v Berle, 48 N.Y.2d 254, 263-264). As the majority notes, Supreme Court relied upon the now-discredited principle of "single and separate ownership" in granting the petition without an evidentiary hearing, and neither Supreme Court nor the Appellate Division addressed Mrs. Anello's claim of a taking. I agree with the majority that Mrs. Anello's other arguments are unpreserved or without merit. I would, however, modify by deleting so much of the order of the Appellate Division that dismisses the petition, and remit the case to Supreme Court for a hearing on petitioner's taking claim (Spears v Berle, supra).
Order affirmed, with costs.
NOTES
[1] As the dissent notes, Justice Kennedy opined in Lucas that "[s]ome circularity must be tolerated in these matters," but Justice Kennedy was discussing the impact of newly enacted regulations on a property owner's investment-backed expectations, and not the separate issue of preexisting restrictions inhering in title (see, Lucas v South Carolina Coastal Council, 505 US 1003, 1034-1035 [Kennedy, J., concurring]). In this connection, Justice Kennedy observed that "[t]he common law of nuisance is too narrow a confine for the exercise of regulatory power in a complex and interdependent society. * * * The State should not be prevented from enacting new regulatory initiatives in response to changing conditions * * *. The Takings Clause does not require a static body of state property law" (id., at 1035 [citation omitted]).
[2] The dissent's arguments concerning the ability of an owner to separately transfer a compensatory takings claim to a successor-in-interest and the right of a decedent's estate to assert such a claim are directed to issues not before us. As noted in Gazza (89 NY2d, at 614, n 4), we leave for another day the issues of transferability left open by these cases.