Wesley, J.
(dissenting). I disagree that the enforcement of the steep-slope ordinance does not constitute a taking of petitioner’s property merely because the ordinance was enacted prior to petitioner’s acquisition of the property. I, therefore, respectfully dissent.
In Lucas v South Carolina Coastal Council (505 US 1003, 1029), the United States Supreme Court held that a confisca *542 tory regulation, i.e., one that prohibits all economically beneficial use of land, "cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State’s law of property and nuisance already place upon land ownership.” If the Village ordinance in. this case prohibits all economically beneficial use of Mrs. Anello’s property, then Mrs. Anello must be compensated for the property unless she had already been restricted from developing it by the very nature and location of the lot or by another principle of the law of property of New York.
The majority holds that Mrs. Anello had already been restricted from developing the property by the ordinance itself, because the ordinance had been in effect for two years before she acquired the property. If so, then for any parcel of property that is completely deprived of its value by the ordinance, the Village has, " 'by ipse dixit, * * * transformed] private property into public property without compensation’ ” once the parcel is transferred to another (Lucas v South Carolina Coastal Council, supra, 505 US, at 1031, quoting Webb’s Fabulous Pharmacies v Beckwith, 449 US 155, 164).
The fact that a parcel is transferred should not make a oncecompensable taking become noncompensable. As we reaffirm today, "a subsequent purchaser may attack previously enacted regulations that affect the purchased property as beyond government’s legitimate police power” (Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603, 614, citing Pennsylvania Coal Co. v Mahon, 260 US 393, 413; and Vernon Park Realty v City of Mount Vernon, 307 NY 493, 500-501).
The majority reaffirms this rule only in the context of a challenge to the validity of a regulation itself, and not in the context of a claim that an otherwise valid regulation has worked a taking of all the economic value of a particular piece of property. I see no reason to draw such a distinction; to the contrary, I believe that there are compelling reasons why no such distinction should be drawn.
"A rule that a purchaser of real estate takes subject to all existing zoning provisions without any right to challenge any of them would threaten the free transferability of real estate, ignore the possible effect of changed circumstances, and tend to press owners to bring actions challenging any zoning provision of doubtful validity before selling their prop *543 erty. Moreover, such a rule of law would in time lead to a crazy-quilt pattern of the enforceability of a zoning law intended to have uniform applicability” (Lopes v City of Peabody, 417 Mass 299, 303, 629 NE2d 1312, 1315).
Although the court in Lopes noted that "the rights of a subsequent purchaser to takings damages might well stand in a posture significantly different from that of one seeking to have a zoning provision invalidated” (Lopes, supra, at n 8), I believe that each of the considerations applies in this case. For all of these reasons, I would hold that, as long as the Village could not have deprived the prior owners of the parcel of all economically beneficial use of the property without compensation, "the prior owners must be understood to have transferred their full property rights in conveying the lot” (Nollan v California Coastal Commn., 483 US 825, 833-834, n 2; see also, K & K Constr. v Department of Natural Resources, 217 Mich App 56, 64, 551 NW2d 413, 417-418).
If a prior owner cannot transfer a potential taking claim to a subsequent purchaser, then the property’s value is destroyed by the transfer without the government having to pay compensation for it. As suggested by the court in Lopes, and as noted in my concurring opinion in Gazza, the majority’s reasoning effectively forces New York property owners to keep abreast of regulatory enactments and, if an enactment appears to deprive a parcel of its economic value, to seek compensation for the taking. Any property owner who overlooks or misinterprets a regulatory enactment, or who lacks the resources to commence a taking action, cannot transfer the property to someone else without destroying the property’s value. Instead, he or she will find that the property has, without compensation, been dedicated to whatever governmental purpose formed the basis for the regulatory enactment.
The majority’s opinion also has the potential to work an interesting alchemy on the estate of a decedent who, through infirmity or other reason, could not challenge a confiscatory regulation prior to the decedent’s death. The majority’s view also creates the prospect of adjacent landowners with similar lots and similar land use regulations who sue to challenge a regulation as confiscatory, but receive totally different results, dependent upon the date of ownership and the date of the regulation’s enactment. I do not believe that such a restriction on alienability comports with the intent of those who drafted the Constitution (see generally, Kmiec, The Original Under *544 standing of the Taking Clause is Neither Weak nor Obtuse, 88 Colum L Rev 1630 [1988]).
I recognize that "[t]here is an inherent tendency towards circularity” if a taking is defined by the reasonable expectations of the owner, but "[s]ome circularity must be tolerated in these matters” (Lucas v South Carolina Coastal Council, supra, 505 US, at 1034 [Kennedy, J., concurring]). More importantly, as Justice Kennedy points out, the definition is not entirely circular as long as "[t]he expectations protected by the Constitution are based on objective rules and customs that can be understood as reasonable by all parties involved” (Lucas v South Carolina Coastal Council, supra, 505 US, at 1035). Thus, for example, in Gazza the taking issue was not determined by Mr. Gazza’s expectation that the property would be worth $396,000 as a single-family residential lot. That expectation was not reasonable because, as Supreme Court determined, the property had value as a result of other uses permitted under the Tidal Wetlands Act and the local zoning ordinance.
In this case, by contrast, we have no basis for determining whether Mrs. Anello’s expectations were reasonable at this point. I am aware of no principle of New York common law, and the majority cites none, that would have prohibited all economically beneficial use of Mrs. Anello’s property because its over-all slope is approximately 21%. There is, however, no need for us to conduct such a "logically antecedent inquiry into the nature of the owner’s estate” (Lucas v South Carolina Coastal Council, supra, 505 US, at 1027), because no court has yet determined that the denial of the variance from the ordinance deprived the property of all economic use (Spears v Berle, 48 NY2d 254, 263-264). As the majority notes, Supreme Court relied upon the now-discredited principle of "single and separate ownership” in granting the petition without an evidentiary hearing, and neither Supreme Court nor the Appellate Division addressed Mrs. Anello’s claim of a taking. I agree with the majority that Mrs. Anello’s other arguments are unpreserved or without merit. I would, however, modify by deleting so much of the order of the Appellate Division that dismisses the petition, and remit the case to Supreme Court for a hearing on petitioner’s taking claim (Spears v Berle, supra).
*545 Chief Judge Kaye and Judges Bellacosa, Smith and Levine concur with Judge Ciparick; Judge Wesley dissents and votes to modify in a separate opinion; Judge Titone taking no part. Order affirmed, with costs.