OPINION OF THE COURT
Michael F. Mullen, J.
This is a proceeding brought pursuant to CPLR article 78, and ECL 25-0404, to review a determination by the Commissioner of Department of Environmental Conservation (DEC) dated January 16, 1992, which denied an application by petitioner Joseph F. Gazza for a tidal wetlands permit to build a single-family home located in the Village of Quogue, Town of Southampton, in Suffolk County.
Petitioner does not contend the determination was not supported by substantial evidence. He contends it amounts to a "taking” of his property without compensation. In that regard, and pursuant to a prior order of this court dated July 21, 1992, the matter was set down for a hearing, which has now been concluded. The hearing played out before this court over several months, beginning in the end of March and finishing in the middle of June 1993.
At the hearing, petitioner’s witnesses included himself and six others: an engineer, a surveyor, a marine operator, a dock builder, a real estate appraiser, and an attorney who specializes in zoning matters. For its part, respondent DEC called an engineer, a zoning attorney, a real estate appraiser, and an adjoining landowner.
The property in question is located on the north side of Dune Road, in the Village of Quogue. It is in an A-2 residential district, which requires a minimum lot of 43,500 square feet. The property is in excess of 47,000 square feet, and fronts on the Quogue Canal. Approximately 65% of the parcel has been inventoried as tidal wetlands.
The thrust of petitioner’s energies has been to show that *593 without the permit he cannot build on his property, i.e., he cannot economically use his property. And, if that is so, he argues, there has been a regulatory taking (citing Lucas v South Carolina Coastal Council, 505 US —, 112 S Ct 2886). He also argues that the suggested "uses” which the Commissioner would "permit”, e.g., the construction of a parking area, single catwalk and single dock of 20 feet and shed for storage, etc., would never be approved by local officials.
As noted in de St. Aubin v Flacke (68 NY2d 66, 76): "A landowner who claims that land regulation has effected a taking of his property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his claim beyond a reasonable doubt.”
To be successful, the landowner must establish that the regulation so restricts his property that he is precluded from using it for any purpose for which it is reasonably adapted. Stated another way, he must show by "dollars and cents” evidence that under no use permitted by the regulation would the property be capable of producing a reasonable return, i.e., that the economic value, or all but a bare residue of the economic value, has been destroyed (see, de St. Aubin v Flacke, supra, at 79; Spears v Berle, 48 NY2d 254, 263; Matter of Kransteuber v Scheyer, 176 AD2d 724, 727, affd 80 NY2d 783; Matter of Licari v Scheyer, 193 AD2d 604).
At bar, probably the most significant testimony at the hearing was supplied by the petitioner himself, Joseph Gazza. He is an attorney and experienced land developer. In the fall of 1989, he purchased the property for $100,000, and 90% of that amount went directly to the Internal Revenue Service to satisfy a lien.
The circumstances here show beyond cavil that the price the petitioner paid reflected that the property was "burdened” by State and local regulations. As the Second Department recognized in a slightly different context in Berwick v State of New York (107 AD2d 79, 84): "the law follows the realities of the marketplace, which are that a knowledgeable buyer would adjust his purchase price to offset the cost in time and money of applying for a permit and challenging its denial in court as confiscatory. Certainly, a knowledgeable buyer would not pay claimants the full unrestricted residential values of their properties on the day of taking, when the wetlands restrictions were still legally in effect. He would pay only the value *594 of the property as so restricted, plus some increment representing its enhanced value at such future time when he is successful in nullifying the wetlands restrictions in court.”
To further illustrate this point, there was evidence at the hearing to show that petitioner was successful on several occasions in having his real estate taxes on the property reduced. His argument to the assessor was essentially that the “property had wetlands on it and that should be taken into consideration in the taxing of [the] property”.
In other words, it is clear that the property, as "restricted” by the tidal wetlands regulations, is not as "valuable” as it would be without them. But that is not the point. The issue is whether petitioner offered sufficient proof to sustain his heavy burden of showing that the property, as restricted, has lost its economic value, or all but a bare residue of it. The answer is no. The whole focus of the testimony of his own real estate expert was that the property was not as valuable as it would be without the regulations. That is not enough, particularly when there was testimony from a real estate expert called by respondent to show the property, as restricted, had a value of approximately $80,000, which was not too much less than what petitioner “paid” for it ($100,000). In addition, there was a testimony from a local resident that he, through his attorney, offered petitioner $50,000 for the property in 1991, and that the offer had not been withdrawn.
But besides petitioner’s failure to sustain his burden regarding the value issue, there appears to be another reason to deny him relief here. That involves the issue of whether petitioner had a compensable property interest in the first place. Although this issue appears to be one of first impression in New York, the reasoning of the United States Supreme Court in what both sides here agree is a landmark case, viz., Lucas v South Carolina Coastal Council (supra), suggests the answer is no.
In Lucas, the Supreme Court indicated that an individual’s interest in property can only be measured as of the time it is acquired (supra, 505 US, at —, 112 S Ct, at 2899). Or, to put it another way, "the relevant date for determining plaintiffs’ historically rooted expectancies should not be that on which the parcels were conveyed by plaintiffs’ predecessors in interest, but, rather, the dates on which plaintiffs themselves acquired title to their properties.” (See, Preseault v United States, 27 Fed Cl 69, 88.)
*595 A question might be raised as to why the burden for seeking a declaration of a taking must be placed on the landowner at the time the regulation takes effect. The rationale behind Lucas (supra) is not to punish the "original” landowner, but to prevent a windfall to sophisticated subsequent purchasers. Here, at bar, the price petitioner paid for the property was significantly below market value. He "factored” in the inherent limitations on the property when making his offer. To hold now that there was a taking would result in rewarding speculation and placing an extraordinary burden on the State. Gazza acquired a "bundle of rights” when he purchased the Quogue property, but he also acquired a bundle of limitations. Those included the Tidal Wetlands Act.
Petitioner seeks to translate his " 'unilateral expectation or * * * abstract need’ ” into a " 'reasonable investment-backed expectation’.” (Ruckelshaus v Monsanto Co., 467 US 986, 1005.) Since he was on notice of the preexisting limitations on the property, and that those limitations advance a legitimate State interest, he cannot claim a taking (supra, at 1007).
In sum, petitioner has failed to sustain his burden of proof. He is in the same position now as on the date he acquired the property. He cannot reasonably argue that his investment-backed expectations were impacted by legislation which had long been in place when he purchased the property (Preseault v United States, supra, at 95).
The proceeding is dismissed, and the request that the court find that the Commissioner’s determination constitutes the equivalent of a taking without compensation is denied.