89 N.Y.2d 603 (1997)
679 N.E.2d 1035
657 N.Y.S.2d 555
In the Matter of Joseph F. Gazza, Appellant,
v.
New York State Department of Environmental Conservation, Respondent.
Court of Appeals of the State of New York.
Argued January 7, 1997
Decided February 18, 1997.
Esseks, Hefter & Angel, Riverhead (Steven R. Angel and John M. Wagner of counsel), for appellant.
Dennis C. Vacco, Attorney-General, New York City (Gregory J. Nolan, Barbara Gott Billet, Peter H. Schiff, John J. Sipos and Michael Belohlavek of counsel), for respondent.
Bracken & Margolin, Islandia (John P. Bracken of counsel), James S. Burling and Stephen E. Abraham, of the California Bar, admitted pro hac vice, for Pacific Legal Foundation, amicus curiae.
John A. Humbach, White Plains, for Audubon Council of New York State and others, amici curiae.
Wilmer, Cutler & Pickering (William A. Butler, David A. Westbrook and James F. O'Reilly, of the District of Columbia Bar, admitted pro hac vice, of counsel), and James T.B. Tripp, New York City, for Environmental Defense Fund, amicus curiae.
Chief Judge KAYE and Judges BELLACOSA, LEVINE and CIPARICK concur with Judge SMITH; Judge WESLEY concurs in result in a separate opinion; Judge TITONE taking no part.
*608 SMITH, J.
The primary issue in this case is whether the denial of a building variance pursuant to environmental regulation effects an unconstitutional taking (US Const Fifth Amend; NY Const, art I, § 7) for which the landowner must be justly compensated. Petitioner argues that the denial of a variance due to legislation enacted to preserve wetlands is a taking despite the fact that the legislation was fully enacted and in force when he purchased the property. We disagree and affirm the dismissal of the petition.
Petitioner purchased property located in a residentially zoned district in the Village of Quogue, Town of Southampton, Suffolk County, for $100,000. Approximately 65% of the 43,500-square-foot parcel had previously been inventoried as tidal wetlands by the New York State Department of Environmental Conservation (DEC). As Supreme Court found, the purchase price reflected the fact that a variance would be required to build a residence on the property due to its incorporating tidal wetlands. Petitioner estimates that, assuming a variance were granted and a residence could be constructed on the property, the parcel would be worth $396,000.
Petitioner applied to the DEC for two setback variances from the requirements of 6 NYCRR 661.6 to enable him to construct a single-family home on the parcel. The first variance request was from the minimum 75-foot setback required between the tidal wetlands boundary and the dwelling. The second variance *609 request was from the 100-foot setback required between the wetlands boundary and the planned septic system.
The matter was heard by an Administrative Law Judge (ALJ) who recommended that the application be denied. Nevertheless, the ALJ suggested the construction of a dock, catwalk, and/or a small parking lot as possible uses for the property. The Hearing Report of the ALJ was adopted as the decision in the matter by the DEC Commissioner.
In concluding that the petitioner had not sustained his burden of showing that the variances would have no adverse impact on the tidal wetlands contained on the property, the DEC concluded:
"The proposed project and all of the many alternatives that were considered require a variance from the development restrictions of 6 NYCRR 661.6. To receive the variance, the Applicant has the burden to show that, among other things, the granting of a variance would not have an undue adverse impact on the present or potential value of the tidal wetland (6 NYCRR 661.12 (a) [sic]).[[1]] The record clearly demonstrates that the Applicant has not sustained this burden. The proposed project and any of the alternatives would eliminate or diminish several tidal wetland benefits, in particular, values related to flood control, wildlife habitat, marine food production and silt/organic material absorption. Exacerbating these impacts is the fact that losses would occur in one of the few functioning wetlands remaining in an otherwise developed area."
Moreover, the DEC made findings of fact that the proposed construction of a sanitary system threatened both marine life and humans, that other contaminants threatened the area and that flooding problems would be increased.
Because the property was located in a residentially zoned area, none of the uses suggested by the ALJ and adopted by the DEC were allowable without a variance from the Town's Zoning Board. Rather than apply for such a variance, petitioner filed this action pursuant to ECL 25-0404 and CPLR article 78.
In Supreme Court, petitioner did not contend that the DEC's determination was not supported by substantial evidence. *610 Rather, petitioner argued that the decision of respondent, the DEC, constituted a taking without just compensation of petitioner's real property.[2] A hearing was held to determine petitioner's claim.
At the hearing, petitioner's appraiser testified that the value of the property without the wetlands restriction would be $396,000. Respondent's appraiser testified that under the wetlands restrictions, the property was still worth $80,000. There was also testimony from a local resident that in 1991 he offered petitioner $50,000 for the property, an offer that had not been withdrawn.
Supreme Court found that no taking had occurred and dismissed the proceeding. In so holding, the court found that petitioner had failed to demonstrate that his property had "but a bare residue of [its] value" due to the denial of a building permit and the application of the wetlands regulation. (Matter of Gazza v New York State Dept. of Envtl. Conservation, 159 Misc 2d 591, 593.) The court held:
"The issue is whether petitioner offered sufficient proof to sustain his heavy burden of showing that the property, as restricted, has lost its economic value, or all but a bare residue of it. The answer is no. The whole focus of the testimony of his own real estate expert was that the property was not as valuable as it would be without the regulations. That is not enough, particularly when there was testimony from a real estate expert called by respondent to show the property, as restricted, had a value of approximately $80,000, which was not too much less than what petitioner `paid' for it ($100,000)." (Id., at 594.)
Supreme Court went on to explicate an alternative basis to deny petitioner relief. Citing Lucas v South Carolina Coastal Council (505 US 1003), Supreme Court concluded that because petitioner knew at the time he purchased the property that *611 there were wetlands limitations, petitioner did not own an interest in the property which could be "taken" by the denial of the setback variances. The court noted that because his title was limited by the wetlands regulations, petitioner had no reasonable investment-backed expectation that he could build a residence there.
The Appellate Division affirmed the dismissal of the petition and noted that "[c]entral to this appeal is the fact that at the time he purchased the property, the petitioner knew of the wetland regulations that `burdened' it" (Matter of Gazza v New York State Dept. of Envtl. Conservation, 217 AD2d 202, 209). Petitioner argued that he was not bound by such knowledge since it was not until the variance was denied that he was made to suffer a regulatory taking. The Appellate Division disagreed and concluded:
"that where, as here, a landowner does not have a reasonable investment-backed expectation that he would be able to build a residence on his parcel, he cannot claim a regulatory taking when his application for a permit to allow the construction of a building is denied" (217 AD2d 202, 203, supra).
In other words, the Appellate Division, citing Lucas v South Carolina Coastal Council (supra) stated that at the time petitioner purchased this property, he did so knowing that wetlands restrictions were in place. He thus knew that he was purchasing property with limitations on its use. It followed that he took title to the property with restrictions and no compensation was warranted.
Petitioner appeals the determination of his claim that his property has been taken without compensation. He also argues that this Court should review its decision in de St. Aubin v Flacke (68 N.Y.2d 66, 76) which stated that a "landowner who claims that land regulation has effected a taking of his property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his claim beyond a reasonable doubt." He claims that this burden is so onerous that it denies him the equal protection of the law.[3]
In 1973, the Legislature concluded that "tidal wetlands constitute one of the most vital and productive areas of our natural *612 world, and that their protection and preservation are essential." (L 1973, ch 790, § 1.) The Legislature also noted its concern that much of the State's tidal wetlands had already been irreparably destroyed or despoiled and the remaining wetlands were in imminent danger of the same fate (id.). Pursuant to these findings, the Legislature enacted the Tidal Wetlands Act and struck a balance between ecological and economic considerations by preserving and protecting tidal wetlands while permitting reasonable economic use and development (L 1973, ch 790; cf., Spears v Berle, 48 N.Y.2d 254, 260 [discussing policy of Freshwater Wetlands Act enacted in 1975]).
To implement this policy, the Legislature directed the Commissioner of Environmental Conservation to inventory all tidal wetlands in the State of New York (ECL 25-0201). The Commissioner was also empowered to regulate the use of inventoried wetlands as well as the areas immediately adjacent thereto (ECL 25-0202, 25-0301, 25-0302; de St. Aubin v Flacke, 68 N.Y.2d 66, 70, supra [tidal wetlands are "subject to `rigorous regulation'"] [quoting Spears v Berle, 48 NY2d, at 260]).
The Legislature also enacted strict guidelines for the application and granting of permits to landowners desiring to conduct regulated activities in and around inventoried wetlands (ECL 25-0402, 25-0403). The applicant has the "burden of demonstrating that the proposed activity will be in complete accord with the policy and provisions" of the Tidal Wetlands Act (ECL 25-0402 [1]). Judicial review pursuant to CPLR article 78 is available to "[a]ny person aggrieved by the issuance, denial, suspension, or revocation of a permit" (ECL 25-0404). Here, the petitioner initiated an article 78 proceeding challenging the denial of his permit by the DEC.
As provided under section 25-0404:
"In the event that the court may find that the determination of the commissioner constitutes the equivalent of a taking without compensation, and the land so regulated otherwise meets the interest and objectives of this act, it may, at the election of the commissioner, either set aside the order or require the commissioner to acquire the tidal wetlands or such rights in them as have been taken, proceeding under the power of eminent domain" (ECL 25-0404).
Judicial review is a two-step process. As noted in de St. Aubin, "If the court finds that the permit denial is supported *613 by substantial evidence, then a second determination is made in the same proceeding to determine whether the restriction constitutes an unconstitutional taking requiring compensation" (68 NY2d, at 70; see also, Spears v Berle, 48 NY2d, at 261).
Turning to the first step in the process, the DEC's denial of the setback variances in this case is supported by substantial evidence. We have previously noted the findings and conclusions of the DEC which petitioner does not dispute.
It must next be "determined whether the wetlands act, coupled with the denial of the * * * permit, has placed such an onerous burden on the property that a taking must be deemed to have occurred" (Spears v Berle, 48 NY2d, at 261).
In Lucas, the Supreme Court stated:
"Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with. This accords, we think, with our `takings' jurisprudence, which has traditionally been guided by the understandings of our citizens regarding the content of, and the State's power over, the `bundle of rights' that they acquire when they obtain title to property" (505 US, at 1027).
Our courts have long recognized that a property interest must exist before it may be "taken" (United States v Willow Riv. Co., 324 US 499, 502-503; Bennett v Long Is. R. R. Co., 181 N.Y. 431, 435). Neither may a taking claim be based upon property rights that have already been taken away from a landowner in favor of the public. For example, government may "assert a permanent easement that was a pre-existing limitation upon the landowner's title" (Lucas v South Carolina Coastal Council, 505 US, at 1028-1029). Similarly, regulatory limitations that "inhere in the title itself" will bind a purchaser (id., at 1029). To paraphrase Supreme Court's ruling, the purchase of a "bundle of rights" necessarily includes the acquisition of a bundle of limitations.
Under a State's power of eminent domain, the legitimate exercise of police power to advance the general welfare may result in the redefinition of property interests in favor of the public. It is that redefinition of a landowner's title that can *614 serve as the basis of a takings claim. Indeed, the United States and New York State Constitutions both provide that a private party must be compensated when such interests are "taken" away so a landowner may look to the government for just compensation upon the destruction of a formerly owned property interest.
However, once taken, those property interests are no longer owned by the private landowner and may not be sold by such party. Rather, a promulgated regulation forms part of the title to property as a preexisting rule of State law. While the remaining property interests may still be freely transferred by the landowner, a purchaser's title is necessarily limited to and by those property interests alone.[4]
Of course, the State may exercise its police power of eminent domain only upon a showing of a valid legislative purpose. Thus, it has been recognized that a subsequent purchaser may attack previously enacted regulations that affect the purchased property as beyond government's legitimate police power (see, e.g., Pennsylvania Coal Co. v Mahon, 260 US 393, 413 ["it always is open to interested parties to contend that the legislature has gone beyond its constitutional power"]). In Vernon Park Realty v City of Mount Vernon (307 N.Y. 493), this Court held: "Purchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance since the zoning ordinance in the very nature of things has reference to land rather than to owner [citation omitted]. Knowledge of the owner cannot validate an otherwise invalid ordinance" (307 NY, at 500-501).
While any party adversely affected by government action may attack such action as unconstitutional and illegitimate, petitioner does not claim that wetlands regulation is beyond the State's power. Rather, petitioner simply claims that the property interest he had in building a dwelling on his land was taken by the State through the denial of the setback variance.
The determination of whether a property interest exists to support a taking claim is typically the threshold inquiry (see, Lucas v South Carolina Coastal Council, 505 US 1003, 1027, supra [addressing the "logically antecedent inquiry into the nature of the owner's estate"]; Soon Duck Kim v City of New York, 90 N.Y.2d 1, 6 *615 [decided today]).[5] In this case, the petitioner's claim is based upon the denial of the setback variances. Petitioner had a reasonable expectation that the DEC would consider his request in accordance with the standards and purposes of the wetlands regulations generally and as applied to other landowners. The Legislature has expressly provided for judicial review of DEC action taken pursuant to a permit request (ECL 25-0404). Such action must state the "findings and reasons" upon which it is based (ECL 25-0403 [4]). The Commissioner may elect the remedy if a court finds that a DEC determination "constitutes the equivalent of a taking without compensation" (ECL 25-0404).
We have previously noted that the subject regulations were implemented to balance ecological and economic considerations (ECL 25-0102). The regulations of the DEC expressly provide that it must examine a permit request "taking into account the social and economic benefits which may be derived from the proposed activity" (6 NYCRR 661.9 [b] [1] [i]). In connection with its review of a permit request under its regulations, the DEC has the authority to "modify the application of any provisions in such a manner that the spirit and intent of the pertinent provisions shall be observed, that public safety and welfare are secured and substantial justice done" (6 NYCRR 661.11 [a]).
However, petitioner does not dispute that the DEC's determination is supported by substantial evidence. Thus, whatever claim petitioner may have had that his application was not decided in accordance with DEC regulations, must fail.
Although petitioner's permit application was entitled to due consideration, petitioner's claim that the denial of his variance was a "taking" must fail because he never owned an absolute right to build on his land without a variance. As stated in French Investing Co. v City of New York (39 N.Y.2d 587, 597), "[i]t is recognized that the `value' of property is not a concrete or tangible attribute but an abstraction derived from the economic uses to which the property may be put." Since the enactment of the wetland regulations, the only permissible uses for the subject property were dependent upon those regulations which were a legitimate exercise of police power. Petitioner *616 cannot base a taking claim upon an interest he never owned. The relevant property interests owned by the petitioner are defined by those State laws enacted and in effect at the time he took title and they are not dependent on the timing of State action pursuant to such laws.[6]
Although an analysis of the petitioner's title is dispositive, it should be noted that petitioner's taking claim would be infirm under the alternative analysis found by Supreme Court to which we now turn.
Any takings analysis involves the resolution of whether the government legislation is "supported by a substantial State interest and close nexus" (Manocherian v Lenox Hill Hosp., 84 N.Y.2d 385, 399-400; see also, French Investing Co. v City of New York, 39 NY2d, at 596). There is no dispute that the protection of the State's tidal wetlands is a legitimate governmental purpose and restrictions regarding the amount of setback from the edge of the wetlands for building are reasonably related to that purpose.
Once it has been established that the regulations at issue are a legitimate exercise of police power, we must next determine whether the regulations result in a taking of petitioner's property by depriving the landowner of his property rights. Oftentimes, this question may be answered by examining the character of the government action (Penn Cent. Transp. Co. v New York City, 438 US 104, 124). For example, physical occupations have been ruled takings requiring compensation "no matter how minute the intrusion, and no matter how weighty the public purpose behind it" (Lucas v South Carolina Coastal Council, 505 US, at 1015; see also, Loretto v Teleprompter Manhattan CATV Corp., 458 US 419). A taking has also traditionally been found when the government requires land to be "left substantially in its natural state" (Lucas v South Carolina Coastal Council, 505 US, at 1018). As stated in Lucas: "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking" (Lucas v South Carolina Coastal Council, 505 US, at 1019 [emphasis in original]; see also, Penn Cent. Transp. Co. v New York City, 438 US, at 127-128 *617 [discussing cases where a taking was found under regulations that rendered property "wholly useless" or resulted in "complete destruction" of property interest]). Such circumstances have been characterized as a taking per se. The question becomes more complex when the government merely restricts certain uses for property.
The Supreme Court has noted that "government regulation  by definition  involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property" (Andrus v Allard, 444 US 51, 65). Courts have also recognized that regulatory power has constitutional limits (see, e.g., Lucas v South Carolina Coastal Council, 505 US, at 1014 ["the government's power to redefine the range of interests included in the ownership of property [is] necessarily constrained by constitutional limits"]; Pennsylvania Coal Co. v Mahon, 260 US 393, 415, supra ["while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking"]).
However, the outer limit of regulation needed to support a takings determination has not been amenable to firm demarcation (see, Spears v Berle, 48 NY2d, at 262 ["courts have encountered difficulty in formulating a bright-line standard for differentiating permissible police power measures from overly vigorous and hence unconstitutional impositions"]; Lucas v South Carolina Coastal Council, 505 US, at 1015 ["we have generally eschewed any `"set formula"' for determining how far is too far"] [citation omitted]). Accordingly, it has been necessary for courts to engage in "`essentially ad hoc, factual inquiries'" when presented with takings claims (Loretto v Teleprompter Manhattan CATV Corp., 458 US, at 426; Lucas v South Carolina Coastal Council, 505 US, at 1015; Penn Cent. Transp. Co. v New York City, 438 US, at 124).
Courts have enunciated several tests to resolve the fact-intensive question of the impact of regulation upon a landowner (Andrus v Allard, 444 US, at 65 ["Formulas and factors have been developed in a variety of settings"]). Where a per se taking is not demonstrated, whether a taking has occurred may be determined by an examination of various factors such as those set forth in the Penn Central case: the economic impact of the regulation, the extent to which the regulation has interfered with reasonable investment-backed expectations, and the character of the governmental action (see, Lucas v South Carolina Coastal Council, 505 US, at 1019-1020, n 8). *618 For example, an analysis of the regulation's economic impact upon the landowner is one way to resolve the issue. Such impact may be reflected by the economic viability (Penn Cent. Transp. Co. v New York City, 438 US, at 138, n 36) or the "reasonable return" on the property post-regulation (id., at 136). Under such an analysis however, it is clear that the "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking" (Concrete Pipe & Prods. of Cal. v Construction Laborers Pension Trust for S. Cal., 508 US 602, 645; see also, Penn Cent. Transp. Co. v New York City, 438 US, at 131 [cases "uniformly reject the proposition that diminution in property value, standing alone, can establish a `taking'"]).
The Supreme Court in Penn Cent. Transp. Co. v New York City (438 US 104, supra) also noted that an examination of reasonable "investment-backed expectations" (id., at 124) may be particularly relevant. There is no such expectation that a government agency will act in a particular manner when it is not authorized to do so (see, e.g., Ruckelshaus v Monsanto Co., 467 US 986, 1006). Similarly, the mere fact that an agency may take such action does not necessarily give rise to a reasonable expectation when the agency chooses not to so act (id., at 1005 ["`reasonable investment-backed expectation' must be more than a `unilateral expectation or an abstract need'"] [citation omitted]). Expectations may also be examined in light of the level of interference with permissible uses of the land by the subject regulation (Penn Cent. Transp. Co. v New York City, 438 US, at 136).
While such tests may be used as an aid in determining the merits of a takings claim, it has been noted that "[r]esolution of each case * * * ultimately calls as much for the exercise of judgment as for the application of logic" (Andrus v Allard, 444 US, at 65). The primary inquiry must always focus upon "the question of the severity of the impact of the law on appellants' parcel" (Penn Cent. Transp. Co. v New York City, 438 US, at 136).
Furthermore, whatever the analysis used to determine the impact of regulation on a landowner, the fact that a regulation "deprives the property of its most beneficial use does not render it unconstitutional" (Goldblatt v Hempstead, 369 US 590, 592; Penn Cent. Transp. Co. v New York City, 438 US, at 130 [no taking shown merely because landowners are denied "the ability to exploit a property interest that they heretofore had believed was available for development"]). "`Governmental action short of acquisition of title or occupancy has been held, if *619 its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking'" (Ruckelshaus v Monsanto Co., 467 US 986, 1005, supra [quoting United States v General Motors Corp., 323 US 373, 378] [citation omitted]). Thus, a taking may be found only if an onerous burden forces property owners "alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole" (Armstrong v United States, 364 US 40, 49).
Supreme Court found, and there is support in the record for the conclusion that the economic value of the property had not been extinguished since it could still be used for recreational purposes and that petitioner's reasonable expectations were reflected by his consideration of the inherent limitations on the property when he made the purchase offer for thousands less than its worth without the restrictions. Thus, his "reasonable" expectations were not affected when the property remained restricted. Petitioner argues that the finding of value does not take into account the fact that the nonresidential uses proposed by DEC that add value to his land may not be undertaken without a variance from the Village.
In such circumstances, we have stated that petitioner has the burden of showing that it is unreasonable to expect relief from a zoning restriction (de St. Aubin v Flacke, supra, 68 NY2d, at 76, 78-79). Although petitioner did not have to complete the application process to meet his burden on the issue, his conclusory assertion that the zoning variance would not be granted is insufficient when the record contains "ample and convincing" evidence to the contrary (Matter of Gazza v New York State Dept. of Envtl. Conservation, 217 AD2d 202, 212, supra). The Village Law provides that a variance may be granted if an applicant cannot realize a reasonable return without it (Village Law § 7-712-b [2] [b]). The value of the subject property was, at most, diminished as restricted by the regulations.
Here, no per se taking occurred. Moreover, even if petitioner's "bundle of rights" included the "stick" he claims was taken, any burden resulting from the denial of the setback variances would not rise to the level of a taking (Lucas v South Carolina Coastal Council, 505 US, at 1030). Rather, the alleged diminution of value and limitation of property uses caused by the environmental regulations would fall well within constitutional boundaries.
*620 Accordingly, the order of the Appellate Division should be affirmed, with costs.
WESLEY, J. (concurring).
I agree that petitioner has not established a taking because the economic value of his property has not been extinguished. For the reasons set forth in my dissenting opinion in Matter of Anello v Zoning Bd. of Appeals (89 N.Y.2d 535 [decided today]), however, I cannot agree that petitioner would otherwise be unable to establish a taking because he acquired the property after the enactment of the Tidal Wetlands Act. (ECL 25-0101 et seq.)
If, as the majority reaffirms, "a subsequent purchaser may attack previously enacted regulations that affect the purchased property as beyond government's legitimate police power" (majority opn, at 614), then a subsequent purchaser should also be able to challenge an otherwise valid regulation if it results in a taking without compensation. There are many reasons why a prior owner might not have pursued a taking claim. For example, a prior owner may have lacked the financial resources to develop the property or to commence an action on a taking claim. Under the reasoning of the majority, the prior owner would nonetheless have had to keep abreast of regulatory enactments and, if an enactment appeared to deprive the property of its economic value, to challenge the statute. Otherwise, the property may have been rendered worthless without the government paying any compensation for the property. By conveying the property to another party who may be willing and able to develop it or to seek compensation for the taking of its value, the prior owner has instead, under the majority's holding, ensured the destruction of the property's economic value.
There is no need to create a rule of law that restricts the alienability of property in New York in this manner, when we all agree that petitioner has no taking claim for a different reason. Supreme Court determined, and the Appellate Division agreed, that petitioner had not met his burden of proving that the economic value of the property had been destroyed by the denial of a variance. I would affirm on that ground alone.
Order affirmed, with costs.
NOTES
[1] 6 NYCRR 661.11 (a) provides that "[t]he burden of showing that a variance to such provisions should be granted shall rest entirely on the applicant."
[2] The Fifth Amendment to the United States Constitution provides in relevant part that "[n]o person shall * * * be deprived of * * * property, without due process of law; nor shall private property be taken for public use, without just compensation." The Takings Clause of the Fifth Amendment applies to State action through the Fourteenth Amendment (Dolan v City of Tigard, 512 US 374, 383-384 [citing Chicago, Burlington & Quincy R. R. Co. v Chicago, 166 US 226]). Article I, § 7 of the New York State Constitution provides in part that "[p]rivate property shall not be taken for public use without just compensation."
[3] We conclude that whether the petitioner must prove his claim beyond a reasonable doubt or by a lesser standard such as a preponderance of the evidence, there has been no taking and we decline to review the de St. Aubin decision.
[4] The entirely separate inquiry of whether an existing taking claim may be donated, sold, inherited or otherwise assigned is not before this Court. Petitioner does not base his claim on such grounds and we decline to reach the question.
[5] We note that although the issue must be addressed in every taking claim, the absence of an extended discussion does not indicate an erroneous omission. A court is not required to list every consideration upon which its decision is based. The existence of a protectible property interest may be clear (see, Lucas v South Carolina Coastal Council, 505 US, at 1017, n 7).
[6] We have noted that State law may be examined "whatever its source" (Soon Duck Kim v City of New York, 89 NY2d ___, ___, supra [decided today]). Thus, common-law principles and State statutes may be examined to determine the limits and rights of a landowner's title.