510 S.E.2d 716

**Victoria F. WOOTEN, Respondent,**

v.

**SOUTH CAROLINA COASTAL COUNCIL, n/k/a South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management, Appellant.**

No. 24878.

Supreme Court of South Carolina.

Heard Nov. 18, 1998.

Decided Jan. 18, 1999.

Rehearing Denied Feb. 25, 1999.

470

Mary D. Shahid, Chief Counsel, of South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management, for appellant.

Howell V. Bellamy, Jr., and Douglas M. Zayicek, both of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for respondent.

MOORE, Justice:

This is a regulatory taking case. The master found a taking had occurred and awarded respondent $59,000. We reverse.

## FACTS

On February 19, 1991, respondent Victoria Wooten (Wooten) applied for a permit to build a bulkhead[1] and place fill material on a lot which she owned in Cherry Grove. The permit was denied by appellant (Coastal Council)[2] on May 21, 1991. On January 12, 1994, Wooten filed this action in circuit court.

## DISCUSSION

■ Where the State seeks to sustain regulation that deprives land of all economically beneficial use, it "may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1024, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798, 820 (1992). Coastal Council contends the trial court erred in finding that Wooten's proscribed interests have changed since she acquired the property entitling her to compensation. We agree.

■ Wooten acquired the property as a gift from her mother in 1988. The Coastal Management Zone Act (Act) was enacted in 1977.[3] Specifically, Wooten contends Hurricane Hugo, erosion, and the denial of her permit application changed her use interest after she had acquired the property.

■ In *Grant v. South Carolina Coastal Council*, 319 S.C. 348, 461 S.E.2d 388 (1995), relying upon *Lucas, supra,* we held there is no compensable regulatory taking when the property was subject to the restriction on use when the property was acquired.[4] In *Grant,* Grant never had the right to fill critical

---

1. A bulkhead is "a retaining wall designed to retain fill material but not to withstand wave forces on an exposed shoreline." S.C.Code Ann. § 48–39–270(1)(b) (Supp.1997).

2. The South Carolina Coastal Council is now known as the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management.

3. S.C.Code Ann. § 48–39–130(C) (Supp.1997) (original version of statute enacted in 1977).

4. Several other states have also held similarly to our decision in *Grant*. *See, e.g., Gazza v. New York Dep't of Envtl. Conservation,* 89 N.Y.2d 603,

area tidelands on his Folly Beach property. In 1987, when Grant purchased his property, the Act forbade his filling critical areas without a permit from Coastal Council. Therefore, we found that Grant's right to use his property after Hurricane Hugo was not altered from when he originally acquired title to it. Accordingly, we held no taking occurred. Similarly, here, when Wooten acquired the lot in 1988, pursuant to the Act, she was required to obtain a permit prior to building a bulkhead and filling critical areas.[5]

Wooten attempts to distinguish *Grant,* by stating when she acquired the property she had a right to protect it from erosion.[6] However, Wooten would have been required to obtain a permit even if she wanted to build a bulkhead strictly for erosion control. In any event, she testified she applied for a permit to fill a substantial portion of her property to enable her to build a house and not merely to control erosion. Had Wooten merely wanted to prevent erosion, she could have submitted a plan for a retaining wall that would have been placed in a different area and would not have included filling 85% of her lot.

We hold this case is controlled by our holding in *Grant.* The proscribed use interests were not part of Wooten's title when she acquired the property. Because we reverse on this ground, we need not address appellant's remaining issues.

**REVERSED.**

FINNEY, C.J., TOAL, WALLER, and BURNETT, JJ., concur.

___

657 N.Y.S.2d 555, 679 N.E.2d 1035 (1997); *Stevens v. City of Cannon Beach,* 317 Or. 131, 854 P.2d 449 (1993); *City of Virginia Beach v. Bell,* 255 Va. 395, 498 S.E.2d 414 (1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998).

5. Mark Caldwell testified the majority of Wooten's lot was critical area prior to the submission of her permit application.

6. The master attempted to distinguish *Grant* on the basis that Coastal Council presented no evidence the land had ever been denied a permit before. However, in *Grant* the land had not been denied a permit before either.