[4 NYS3d 816]

MONROE EQUITIES LLC, Claimant, v STATE OF NEW YORK,[1] Defendant.

Court of Claims, August 25, 2014

---

1. The court has amended the caption sua sponte to properly reflect the defendant.

**APPEARANCES OF COUNSEL**

*James G. Sweeney* for claimant.

*Eric T. Schneiderman, Attorney General (J. Gardner Ryan* of counsel), for defendant.

**OPINION OF THE COURT**

STEPHEN J. MIGNANO, J.

Claimant seeks damages of one million dollars

> "for a 'categorical' or *'per se'* taking of claimant's land prohibited by the Fifth Amendment to the Constitution as meant by *Lucas v South Carolina Coastal Council*, 505 US 1003 ([1992]) resulting from the imposition of certain governmental watershed protection regulations promulgated by the New York State Department of Health . . . pursuant to Article 11 of the Public Health Law" (claim at 1).

Claimant moves for summary judgment on the issue of liability and defendant cross-moves for dismissal on the grounds that

the claim (1) was served and filed late and (2) it fails to state a viable cause of action since claimant is barred from offering the expert proof necessary to sustain its claim at trial by the operation of section 206.21 of the Uniform Rules for the Court of Claims (Uniform Rules) (22 NYCRR).

The dispute concerns a 16.8-acre parcel of vacant land located on the shores of Mombasha Lake in the Town of Monroe, Orange County. The corporate claimant purchased the parcel in 2005 with the intent, according to its attorney, of subdividing it into three lots and constructing three single family homes "overlooking the pristine and beautiful Mombasha Lake" (Sweeney aff in support of motion ¶ 8).[2] The lake is located entirely within the Town of Monroe and is the sole source of water supply for the Village of Monroe.

The state regulations at issue in this case are undisputed and establish a 300-foot sanitary buffer around the perimeter of the lake, and from any watercourse flowing into the lake, in which no subsurface sanitary waste disposal system may be placed. This restriction was first enacted, at the request of the Village, in 1920 as part of a package of restrictions on the use of the land surrounding the lake, the sole source of water for the Village. The regulations first came under judicial scrutiny in 1929, when the Supreme Court, Orange County (*Village of Monroe v Benjamin*, Dec. 21, 1929, Seeger, J., unreported decision [appendix at 14]), after what counsel describes as a lengthy, contentious and notorious piece of litigation, granted the Village's application for an injunction against recreational activity on the lake, another prohibited activity. The court found that the restrictive regulations were duly enacted in accordance with the procedure prevailing at that time "in an endeavor to protect the health of its citizens and to eliminate any contamination of its water supply aforesaid requested the State Department of Health to adopt the rules and regulations hereinafter referred to" (*id.* ¶ 24). After this decision, counsel advises, the summer community around the lake came to an "utter halt" and the area remained "very rural" (Sweeney aff ¶ 15).

Subsequent to its purchase of the 16.8-acre parcel, 76 years after the decision in the *Benjamin* case, claimant applied to

---

**2.** Counsel, who appears to be a well-informed local historian, has extensive personal knowledge arising from his lifelong residence and law practice in the Town of Monroe, his service as Town and County Attorney and his representation of the corporate claimant in this case in all of the matters and proceedings discussed herein.

the Town of Monroe Planning Board for approval of a subdivision into three residential lots. The proposed subdivision included installation of a septic system for each of the three proposed houses, all within the 300-foot protected zone around the lake. The Town referred the matter to the Village because the property was in the protected watershed and claimant applied for a waiver from the Village. The application was denied on two occasions, with the Village Board of Trustees finding, according to claimant's counsel, "that the land was just too close to the Lake to take the chance" (Sweeney aff ¶ 24) and the Town in a decision dated November 18, 2008 thus rejected the proposed subdivision.

Claimant then filed a claim in this court seeking damages, based on the contention that defendant's enforcement of the Mombasha Lake regulations constituted a taking that deprived its property of all economic value, as articulated in the *Lucas* decision and simultaneously commenced an action against the Village in federal court, seeking the same relief, on the same grounds. Counsel states that the sole reason for the bifurcated action was that only the Court of Claims had jurisdiction over the claim against the State, while the Village could not be joined as a defendant in this court. Claimant moved for an order in this court staying all proceedings until resolution of the action against the Village. The motion was denied, with the court noting that there was no reason to stay disclosure, which had not occurred and which the court suggested proceed concurrently with the federal case (*see Monroe Equities LLC v State of New York*, Ct Cl, Aug. 4, 2009, claim No. 116342, motion No. M-76741). In January 2011, claimant voluntarily discontinued that claim, without prejudice, choosing to litigate the federal action against the Village instead.

Notwithstanding claimant's decision to discontinue its claim in this court alleging a regulatory taking, the United States Court of Appeals for the Second Circuit upheld the dismissal of the action against the Village, specifically based on the pendency of the Court of Claims action, holding that because "plaintiff's state claim for just compensation based on the ostensible enforcement of the DOH regulations has not been finally adjudicated, plaintiff's same claim in the district court based on the Village's authority to apply and enforce those DOH regulations . . . is not ripe for review" (*Monroe Equities LLC v Village of Monroe*, 419 Fed Appx 112, 114 [2d Cir 2011]). Apparently, nobody informed the Second Circuit panel that the state claim they referred to had been discontinued.

Claimant's next move was in Supreme Court, Orange County, where it sought a declaratory judgment against the State that the regulations in question constituted a taking, and apparently also a monetary judgment. That action was dismissed, with the court holding that it was a claim against the State for the appropriation of real property over which the Court of Claims had exclusive jurisdiction (*Monroe Equities LLC v New York State*, Sup Ct, Orange County, Apr. 30, 2012, Bartlett, J., index No. 4037/2011 [appendix at 46]). Claimant brought another action in Supreme Court, this time just seeking the declaratory judgment without the demand for monetary relief, with the same result (*Monroe Equities LLC v New York State*, Sup Ct, Orange County, July 23, 2012, Bartlett, J., index No. 4120/2012 [appendix at 48]). The Appellate Division, Second Department agreed.[3]

Thus, this matter now returns to this court. The instant claim was filed August 24, 2012. No answer has been interposed, as none is required in appropriation claims. Claimant now moves for summary judgment on the issue of liability, in effect seeking what is a given in the typical appropriation case where the State files a map and physically takes someone's property—a declaration that the State is obligated to provide just compensation. The motion is supported by the affidavit of counsel and an affidavit from John Petroccione, an engineer who resides one mile from the property in question who opines—and supports his opinions with specific factual contentions—that the only permitted use of the property that does not require a special permit is agricultural, that the land is unsuited for agriculture and that "the only viable and productive economic use for this property would be the construction of single family detached dwellings overlooking scenic Mombasha Lake" (Petroccione aff at 9). Under this theory, the regulations aimed at preventing the discharge of sewage into the lake oper-

---

3. "The plaintiff, in effect, seeks to bifurcate its claim: to establish the State's liability in the Supreme Court, and then to establish damages in the Court of Claims. The State Constitution, however, vests the Court of Claims with exclusive subject matter jurisdiction over claims against the State for appropriation of real property (*see* NY Const, art VI, § 9; Court of Claims Act § 9 [2]). The plaintiff's action runs afoul of this exclusive grant. Therefore, we agree with the Supreme Court that it lacks subject matter jurisdiction over the plaintiff's claim" (*Monroe Equities, LLC v New York State*, 111 AD3d 803, 804 [2013]).

ate as a taking for which the State of New York must compensate the claimant.

Defendant opposes the motion by cross-moving to dismiss on two distinct grounds. First, defendant alleges that the claim was interposed in contravention of Court of Claims Act § 10 (1) which requires an appropriation claim to be filed within three years of accrual, noting that whatever date between 1920 (when the regulations were enacted) and November 2008 when the Town Planning Board denied its subdivision application based on the state regulations is the correct accrual date, the claim was filed more than three years later.

Claimant responds by (1) arguing that there is no statute of limitations applicable to the claim because it is based on a continuing wrong and (2) contending that defendant waived the defense, citing Court of Claims Act § 11 (c) which provides that

> "[a]ny objection or defense based upon failure to comply with . . . the time limitations contained in section ten of this act . . . is waived unless raised, with particularity, either by a motion to dismiss made before service of the responsive pleading is required or in the responsive pleading, and if so waived the court shall not dismiss the claim for such failure."

The first contention is without merit—clearly this claim accrued no later than November 2008—but the second is correct and dispositive of the timeliness question.

Although section 11 (c) refers to "the responsive pleading," the requirement that defendant interpose an answer to a claim in the Court of Claims is found not in the Court of Claims Act but in section 206.7 (a) of the Uniform Rules for the Court of Claims (22 NYCRR): "Except in appropriation actions, the defendant shall serve an answer to each claim; the defendant may include a counterclaim in its answer . . . Except as extended by CPLR 3211(f), service of all responsive pleadings shall be made within 40 days of service of the pleading to which it responds."

The interplay of this provision with section 11 (c) is that defendant need not submit an answer in an appropriation claim if it merely wants to deny the allegations of the claim. However, if defendant wishes to assert a defense that the statute provides is waived if not asserted in the answer or in a pre-answer motion, then it must comply with the statute or the

defense is waived. The implied contention that because defendant was not required to answer the claim in order to effectuate a denial, it can then raise a defense that the statute provides is waived if not specifically asserted—i.e., that the provisions of a court rule can abrogate a statutory requirement—is patently untenable. And the rule merely states that an answer is not required in order for the allegations of the claim to be deemed denied. It does not state or imply that an answer or a dismissal motion is not required to raise an affirmative defense, and cannot be held to abrogate the statutory mandate set forth in section 11 (c) of the statute, which clearly provides that defendant has waived any timeliness defense in this case.

Defendant next relies on Uniform Rules § 206.21 which requires that appraisal or other expert reports be filed within six months of the claim filing, unless extended (which has not occurred here), and provides that the failure to comply with this requirement results in preclusion of valuation testimony at trial. Claimant responds by contending that an appraisal is irrelevant to its case—that an appraisal would be an inappropriate vehicle to establish that the property has no economically beneficial use and that "[i]t doesn't take 'dollar and cents' proof by an appraiser to reach that conclusion. Not at all. It takes the considered statements and conclusions of a land use professional like Petroccione, made after a thorough technical analysis, that the property cannot be used for *any* use allowable by law" (claimant's mem of law in opposition to cross motion at 23).

Although claimant seems to ignore that the rule treats reports of experts such as Petroccione the same as appraisal reports—"shall be filed within the same time and in the same manner" (Uniform Rules § 206.21 [d])—the court need not reach its effect on this case because the court finds that the record establishes that there has been no taking and that defendant is entitled to summary judgment of dismissal on the merits.

Procedural technicalities aside, the substance of the claim is claimant's contention that the regulations in dispute effect a total regulatory taking of the type held compensable in *Lucas v South Carolina Coastal Council*: "[w]here the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate

shows that the proscribed use interests were not part of his title to begin with" (505 US 1003, 1027 [1992]).[4]

In that case, the plaintiff had purchased two beachfront lots in 1986 with the intent of constructing beachfront residences. Two years later, South Carolina's enactment of the Beachfront Management Act prohibited any construction on the lots, an action that the trial court found rendered the property valueless. As it was uncontested that Lucas had the right to develop the property without applying for permission prior to the enactment of the state regulations, the Supreme Court held that the State's actions constituted a taking requiring compensation under the Fifth Amendment.

■ The factual contrast between *Lucas* and this case is immediately evident. On the one hand, a purchaser buys lots for residential development, lots that he has the unfettered right to build on, and subsequently-enacted regulations prevent him from building those residences, the only possible use of the land. On the other, a purchaser buys land that has been the subject of the restriction that prevents residential development for over 80 years prior to the purchase. The former purchaser is entitled to compensation under the Fifth Amendment because the state took something from him to which he was entitled "of right" at the time of the purchase. Claimant's position herein is that the factual difference—that the restriction on the land was not created subsequent to the purchase but 80 years prior—is irrelevant and that it is entitled to an award of a million dollars because the land cannot be developed. This court disagrees and holds that under the circumstances presented in this case, claimant has not established a categorical or per se taking as articulated in the *Lucas* decision. The court further finds that defendant is entitled to summary judgment because the facts and circumstances presented in this matter demonstrate that nothing was taken from claimant to which he had an "of right" entitlement at the time of purchase.

The Court of Appeals has also given this court guidance in deciding this matter. In *Matter of Gazza v New York State Dept.*

---

**4.** Although the claim seeks relief solely based on the principle enunciated in *Lucas*, the allegations naturally raise the question of whether the facts could support a finding that a partial regulatory taking claim had occurred (*Penn Central Transp. Co. v New York City*, 438 US 104 [1978]) or whether relief was available under an "exaction" theory (*Dolan v City of Tigard*, 512 US 374 [1994]; *Nollan v California Coastal Comm'n*, 483 US 825 [1987]). After extensive analysis of the case law on those theories, the court concludes that claimant cannot prevail under either theory.

*of Envtl. Conservation* (89 NY2d 603 [1997]), the facts were as follows: The property owner purchased a lot in a residentially zoned district in Suffolk County that had previously been inventoried by the Department of Environmental Conservation (DEC) as tidal wetlands. The purchase price was $100,000, but the petitioner estimated that it would have been worth $396,000 had the tidal wetlands restrictions not required variances in order to build. After the petitioner's application for relief from the restrictions was denied by the State DEC, he filed an action contending that "the denial of a variance due to legislation enacted to preserve wetlands is a taking despite the fact that the legislation was fully enacted and in force when he purchased the property" (89 NY2d 603, 608). Supreme Court, the Appellate Division and the Court of Appeals disagreed, with the latter holding that "petitioner's claim that the denial of his variance was a 'taking' must fail because he never owned an absolute right to build on his land without a variance . . . . Petitioner cannot base a taking claim upon an interest he never owned" (*id.* at 615-616). The Court, citing the *Lucas* court's reference to the "logically antecedent inquiry into the nature of the owner's estate" (505 US 1003, 1027) noted that the determination of whether a property interest exists to support a taking claim is the threshold inquiry and the facts of that case were such that the petitioner could not show that any right was taken from him (89 NY2d 603, 615-616).

The issue of whether claimant in this case owned anything that was taken from him—specifically, whether claimant can establish a claim of regulatory taking when it purchased the property 85 years after the allegedly offending regulations were enacted—was asserted by claimant as the dispositive issue in the case and is fully discussed in its supporting memorandum of law. Claimant relies on *Palazzolo v Rhode Island* (533 US 606 [2001])[5] to support the proposition that the timing of the state action constituting the taking vis-à-vis the claimant's purchase of the property is entirely irrelevant to anything that the court is to consider under a *Lucas* analysis and that when it purchased the land in 2005, part of what it purchased from the former owner was the right to bring a regulatory taking claim against the state arising from the enforcement of the 1920 regulations. Claimant reads the *Palazzolo* decision more broadly than does this court.

---

**5.** *Palazzolo* was decided in 2001, four years after the *Gazza* decision and four years prior to claimant's purchase of the land bordering Mombasha Lake.

*Palazzolo* involved an 18-acre parcel of salt marsh wetlands that was purchased by a closely held corporation in 1959, after which Palazzolo, the primary shareholder, bought out his associates and became the sole shareholder. Various applications to develop the property were rejected over the years and in 1971, Rhode Island created a Coastal Resources Management Program, severely limiting potential development on wetlands. In 1978, the corporate owner's charter was revoked and title passed to Palazzolo, individually, as the former corporation's sole shareholder. In 1983 and 1985 his applications to develop the property were rejected and he filed a claim based on *Lucas*, a claim that was rejected by the Rhode Island courts on the ground, inter alia, that he had no right to challenge regulations predating 1978, when he succeeded to legal ownership (746 A2d 707, 716 [2000]).[6]

The Supreme Court reversed, noting that the law of Rhode Island as interpreted by its highest court amounted to "a single, sweeping rule: A purchaser or a successive title holder like petitioner is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking" (533 US 606, 626), and holding that such a "blanket rule" was inconsistent with the Takings Clause of the Constitution (533 US 606, 628). The Court found that the single, sweeping rule[7] applied by the Rhode Island courts—that a "successive title holder like petitioner is deemed to have notice of an earlier-enacted restriction and is barred from claiming that it effects a taking" (533 US 606, 626) was inconsistent with the constitutional obligation to provide just compensation for property taken. The Court gave the example of the property owner who has the right to challenge a regulation but did not or could not

**6.** The court also held that the *Lucas* claim failed because the record showed that there was some residual development potential in upland portions of the property, thus negating the requirement that a *Lucas* claim (i.e., a claim of categorical or per se taking) involve a taking that deprives the owner of all economically productive use of the land (746 A2d 707, 715). While the extant facts might have otherwise supported a claim that government regulation impaired but did not destroy the property's value (*see Penn Central Transp. Co. v New York City*, 438 US 104 [1978]; *Tahoe-Sierra Preservation Council, Inc. v Tahoe Regional Planning Agency*, 535 US 302 [2002]), the Rhode Island Supreme Court held that Palazzolo's acquisition of title after the enactment of the regulations also barred such a claim (746 A2d 707, 717).

**7.** The reference to "single" was to the fact that the Rhode Island rule applied to both *Lucas* (total regulatory takings) and *Penn Central* (partial regulatory takings).

take the steps necessary to make a claim ripe for adjudication and instead sold the property in a sale that includes the right to challenge the regulatory action. Such a purchaser should have the opportunity to make the argument that he purchased whatever claim arose from the enforcement of the regulations and should not be barred in all cases, without further consideration, by a broad sweeping rule.

Although the Court rejected the proposition that "any new regulation, once enacted, becomes a background principle of property law which cannot be challenged by those who acquire title after the enactment," it also stated that it had "no occasion to consider the precise circumstances when a legislative enactment can be deemed a background principle of state law" other than to note that "a regulation that otherwise would be unconstitutional absent compensation is not transformed into a background principle of the State's law by mere virtue of the passage of title" (533 US 606, 629-630), certainly an apt description of the facts in *Palazzolo*, where the only thing that postdated the regulatory enactment was indeed a "mere" passage of title from a corporation to its sole shareholder upon dissolution.[8] Indeed, in this court's view, *Palazzolo* was not a change in ownership so much as a mere change in the form of ownership by the same title holder. That is quite different from the case at bar.

Claimant maintains that *Palazzolo* not only held that a property owner's acquisition of title subsequent to the alleged confiscatory regulation cannot act as an absolute bar to a *Lucas* claim, it also stands for the proposition that the relationship between those two dates is irrelevant and simply not to be considered at all, in any case. "The claim travels with the property," claimant argues, so that when claimant purchased this property in 2005, part of the bundle of rights that it purchased

---

**8.** Despite holding that the date on which the petitioner had acquired title in his name was not dispositive, the Court found that he did not state a claim under *Lucas* because the record did not demonstrate a total deprivation of economic use, with other uses and significant residual value possible. The case was remanded for analysis under *Penn Central Transp. Co. v New York City* (438 US 104 [1978]) to determine if there had been a partial compensable taking. See *Matter of Friedenburg v New York State Dept. of Envtl. Conservation* (3 AD3d 86 [2d Dept 2003]) for a discussion of the distinction between a claim of total deprivation of economic value resulting in a per se finding (*Lucas*) versus a claim that regulations severely impair a property's value (*Penn Central*), which may or may not result in a finding that there was a taking, depending on a balancing of any and all factors claimed to be relevant.

from the prior owner was the right to bring a claim against the State of New York for the taking resulting from the 1920 regulations. All that is required for summary judgment under claimant's theory is the engineer's unrefuted opinion and citation to the *Palazzolo* decision.

Unfortunately, claimant fails to provide any sort of itinerary for this 80-plus years of traveling, how many stops the claim made, how much was the cost. No information is presented as to the chain of title from 1920 through 2005, who claimant bought the property from, how much it paid or how the purchase price related to those for comparable properties in the area where residential development is allowed or is not allowed. Indeed, the sole figure appearing in all of claimant's papers is the one million dollars in damages it requests, with not the hint of an indication of how that sum was computed. Facts that were crucial to the decisions in the cases in the field—the corporate versus personal ownership situation in *Palazzolo*, the fact that in *Gazza* it was demonstrable that the purchase price reflected limitation on allowed activity, the extensive factual record in *Lucas*—are all missing from the current record because claimant contends that they are irrelevant.

The court is fully aware of the expertise of claimant's counsel in these matters. Thus, the lack of such information in claimant's meticulous presentation is not the result of some oversight, but grows directly from claimant's essential contention on this summary judgment motion and indeed in this litigation. According to claimant, what the *Lucas* court referred to as the "logically antecedent inquiry into the nature of the owner's estate" (505 US 1003, 1027), a predicate to consideration of whether anything was taken from a property owner, is, after *Palazzolo*, limited to and exactly coextensive with New York's common law of nuisance. Anything that was not barred under the common law of nuisance when a regulation is enacted, under this theory, cannot, as a matter of law, be considered in the inquiry into the antecedent nature of the owner's estate. All property with any restriction other than that arising from the common law of nuisance carries with it a takings claim under the Fifth Amendment, either as a partial taking (if the *Penn Central* balancing test can be met) or total taking (under *Lucas*). "The claim travels with the land," regardless of any other factor, goes the argument. Claimant has, after years of litigation, laid bare its case herein. Unfortunately,

part of that case does not include reference to judicial authority supportive of claimant's position.[9]

In addition to the lack of supporting judicial authority, there are significant public policy implications to adopting claimant's position. Taken to its logical extreme, this novel concept that the right to challenge a regulatory scheme runs with the land, could be interpreted to confer that right upon any property owner who is affected by any regulation, no matter when enacted. While it may be somewhat reductio ad absurdum, claimant's position would support a potential damages claim based on every zoning regulation enacted since *Village of Euclid v Ambler Realty Co.* (272 US 365 [1926]) first upheld the concept of zoning as a police power.

A property owner who claims that governmental land use regulation has effected a taking of his or her property bears a heavy burden of proving each and every element of the claim (*de St. Aubin v Flacke*, 68 NY2d 66 [1986]; *Matter of Friedenburg v New York State Dept. of Envtl. Conservation*, 3 AD3d 86 [2003]) including the basic, "antecedent inquiry into the nature of the owner's estate" (*Lucas*, 505 US 1003, 1027). Claimant's contention that such inquiry is limited to the state of the common law of nuisance on the date the restriction was enacted, the basis of this claim, is rejected, with the court finding that all of the various items identified above are crucial to determining whether this claimant in fact purchased a takings claim arising from the 1920 restrictions as part of its title, when it made the purchase in 2005 for an unidentified sum from an

---

**9.** Indeed the concurring comments of Justice O'Connor (part of the majority in *Palazzolo* which held that it had "no occasion to consider the precise circumstances when a legislative enactment can be deemed a background principle of state law" [533 US 606, 629])—that

"[t]oday's holding does not mean that the timing of the regulation's enactment relative to the acquisition of title is immaterial to the *Penn Central* analysis. Indeed, it would be just as much error to expunge this consideration from the takings inquiry as it would be to accord it exclusive significance" (533 US 606, 633)

—directly contradict claimant's essential contention herein, notwithstanding that they are specifically directed at *Penn Central* analysis (because that is the claim that survived the decision). The inquiry into the nature of the owner's estate pre-(alleged) taking would be the same whether the ensuing contention is that the current value of the property is nothing or only greatly diminished. Justice Scalia's concurrence taking issue with Justice O'Connor's comments indicates that he perhaps would be more receptive to claimant's contentions with respect to the nature of the inquiry, the resulting widespread existence of heretofore unknown claims against the state and what is required for a summary finding of a compensable taking.

unidentified vendor who in turn acquired title in an unidentified manner. The court finds, searching the complete record provided by claimant (*see Wernicki v Knipper*, 119 AD3d 775 [2014]) that the facts cannot support the claim that claimant has suffered a regulatory taking under the *Lucas* principles. Accordingly, defendant is granted summary judgment on the merits and the claim is dismissed.